74 F.3d 1248
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James S. BRODIE, Larry A. Butcher, William A. Thompson,
Travis Skaggs and Mike Phillips, Plaintiffs,
and
Randy Dutton, Plaintiff-Appellee,
v.
GENERAL CHEMICAL CORPORATION, a Delaware corporation,
Defendant-Appellant.
James S. BRODIE, Larry A. Butcher and William A. Thompson,
Plaintiffs-Appellants,
Travis Skaggs, Mike Phillips and Randy Dutton, Plaintiffs,
v.
GENERAL CHEMICAL CORPORATION, a Delaware corporation,
Defendant-Appellee.
 Nos. 94-8094, 94-8095.
 United States Court of Appeals, Tenth Circuit.
 Jan. 12, 1996.
 
 Before BRISCOE, COFFIN* and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT[1]
 BARRETT, Senior Circuit Judge.
 
 
 1
 General Chemical Corporation, (General Chemical) appeals the jury verdict and judgment in favor of Randy Dutton (Dutton). James S. Brodie (Brodie), Larry A. Butcher (Butcher), and William A. Thompson (Thompson) (collectively referred to as "cross-appellants") cross-appeal the jury verdict and judgment in favor of General Chemical.
 
 Facts
 
 2
 This action was initiated on May 6, 1993, by Brodie, Butcher, and Thompson against General Chemical asserting claims for breach of contract, promissory estoppel, and age discrimination.[2] The complaint was amended June 8, 1993, to add Dutton. A second amended complaint added claims for breach of the implied covenant of good faith and fair dealing on behalf of all parties and claims for age and handicap discrimination on behalf of Dutton. All the claims arose out of their termination of employment with General Chemical at General Chemical's soda ash mine in Green River, Wyoming.
 
 
 3
 Dutton worked at the Green River mine from 1979 until his termination April 13, 1993. Throughout his tenure at the mine, Dutton held various positions in the safety department. In 1980, he was promoted to Safety Superintendent, a position which required him to go into the mine.
 
 
 4
 In 1987, Dutton began having eye trouble. He tore the retina in both eyes which required surgical repair and resulted in a substantial reduction in his vision. Following surgery, Dutton's treating physician advised General Chemical that Dutton was not to climb stairs or go into dark places. These restrictions effectively precluded Dutton from performing his essential job functions. Thereafter, General Chemical transferred him to the newly created position of Safety Coordinator. This position required routine paperwork concerning safety statistics and compliance with various mine safety regulations. Dutton also acted as an intermediary between General Chemical and various mine safety organizations.
 
 
 5
 On April 13, 1993, Dutton's position as Safety Coordinator was eliminated as part of a plant-wide reduction in force. At the time of his termination, Dutton was age 55, earning $57,500 annually with an additional $15,000 annually in benefits.
 
 
 6
 In July, 1993, Dutton applied for social security disability benefits. In his initial application for benefits, he identified his disability as a lack of vision and depth perception due to retinal tears in both eyes. His initial application was denied. Dutton appealed the denial of benefits and included a claim that he suffered from severe depression resulting from the loss of his employment. He was subsequently granted benefits of $1,158 per month retroactively effective as of October 1, 1993. In November, 1993, Dutton also began receiving pension benefits from General Chemical in the amount of $1,450 per month.
 
 
 7
 Brodie, Thompson, and Butcher (cross-appellants) held security guard/certified EMT positions with General Chemical. In 1986, when General Chemical took over the operations of Allied Chemical, the Employee Handbook and Standard Operating Procedures Manual (collectively the "handbooks"), which had been provided to cross-appellants earlier, were retained for plant operations. In May, 1991, both handbooks were revoked by General Chemical. General Chemical allegedly revoked the handbooks to remove any contended employment rights beyond "at-will" contract status. In 1993, General Chemical eliminated the entire security force and contracted with an outside agency to provide security services.
 
 
 8
 The matter proceeded to trial on May 11, 1994. On June 22, 1994, the jury returned a verdict in favor of General Chemical with respect to all claims asserted by cross-appellants and with respect to the age and handicap discrimination claims asserted by Dutton. The jury returned a verdict in favor of Dutton on his claims for breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing, awarding him $436,140 ($302,462 in compensatory damages for lost wages).[3]
 
 
 9
 On July 6, 1994, General Chemical timely filed a motion for a judgment notwithstanding the verdict (j.n.o.v.) pursuant to Rule 50(b) or, in the alternative, to amend the judgment pursuant to Rule 59(e). On July 7, 1994, cross-appellants filed a motion for a new trial based on erroneous jury instructions. The district court denied both motions on September 9, 1994.
 
 Discussion
 I. Appeal
 
 10
 On appeal, General Chemical contends that: (1) the jury award of nine years back and front pay to Dutton must be reduced because Dutton was disabled and unable to work as of October 1, 1993; (2) the district court erred in admitting testimony and documents relating to Dutton's application for disability benefits; (3) Dutton should be equitably estopped from arguing that his disability was caused by General Chemical; (4) if the award is not tolled as of October 1, 1993, the jury's award of lost wages to Dutton must be reduced by the amount he received in pension and social security disability benefits.
 
 
 11
 "When a jury verdict is challenged on appeal, our review is limited to determining whether the record--viewed in light most favorable to the prevailing party--contains substantial evidence to support the jury's decision." F.D.I.C. v. Everett A. Holseth & Co., 36 F.3d 1004, 1008 (10th Cir.1994) (citations omitted).
 
 A.
 
 12
 General Chemical contends that the district court erred in denying its motion for a judgment notwithstanding the verdict because there was no evidence which would support the jury's award of nine years back and front pay to Dutton in light of the fact that Dutton was unable to work as of October 1, 1993. General Chemical asserts that, at most, Dutton was entitled to back pay from April 13, 1993, to October 1, 1993, and that "the jury simply ignored or overlooked the trial court's instruction that periods of disability must be excluded from an award representing lost earnings." (Brief for Appellants at 16).
 
 
 13
 We review the denial of a motion for j.n.o.v. de novo. Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir.), cert. denied, --- U.S. ---- (1995). Accordingly, we apply the same standard as the district court and must construe the evidence and inferences most favorably to the nonmoving party. F.D.I.C. v. United Pac. Ins. Co., 20 F.3d 1070, 1079 (10th Cir.1994).
 
 
 14
 At the close of evidence, the district court instructed the jury that "[i]f you find that any of the plaintiffs was physically unable to work for any period of time subsequent to the cessation of their employment with the defendant, that plaintiff is not entitled to receive any back pay or benefits for that time period." (Appendix for Appellant, Vol. I at 162). A special verdict was submitted to the jury which asked what amount of damages, if any, it was awarding Dutton and what amount, if any, was compensation for lost wages. The jury awarded $436,140 in total damages of which $302,462 was designated as compensation for lost wages. Id. at 189. The jury was not asked to state how it calculated these amounts.
 
 
 15
 General Chemical did not request that the jury explain how it calculated the damages nor did it object to the instruction as given. In the absence of any objection to the instruction given, we will presume that the issue was submitted to the jury under proper instruction. Whiteley v. OKC Corp., 719 F.2d 1051, 1059 (10th Cir.1983). There is no clear indication that the jury ignored its instructions and "we will not impute to a jury the inability to understand correctly the total instructions of the trial court; nor will we impute nonfeasance, by disregard of a court's instructions, to a jury." Id. See also Rasmussen Drilling Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1149 (10th Cir.), cert. denied, 439 U.S. 862 (1978). Accordingly, we hold that there was ample evidence that, at all times, Dutton could have performed his functions and duties as Safety Coordinator and we will not impute error in the jury's award of damages.
 
 B.
 
 16
 General Chemical contends that the district court erred in allowing Marshall Broyles (Broyles), the program manager for the Social Security Administration (SSA) in Wyoming, to testify and by admitting exhibits 200 and 205 in evidence. General Chemical avers that: neither Broyles nor the documents were identified in the final pretrial order nor on plaintiff's witnesses and exhibits list; Broyles admitted that he had no personal knowledge of Dutton's application or eligibility for disability benefits; and the documents introduced through Broyles were unfamiliar to him and contained obvious alterations, errors, and unsubstantiated hearsay.
 
 
 17
 The evidentiary rulings of a district court are reviewed for an abuse of discretion, Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1433 (10th Cir.1993), including decisions whether to allow the testimony of witnesses not listed in the pretrial order. F.D.I.C. v. Oldenburg, 34 F.3d 1529, 1556 (10th Cir.1994). "Under this deferential standard of review, a trial court will be reversed only if we have a firm and definite belief that the trial court made a clear error in judgment." Faulkner, 3 F.3d at 1433.
 
 
 18
 Broyles was called as a rebuttal witness to General Chemical's argument that Dutton's social security disability status precluded his recovery. Broyles, as the program manager for the SSA in Wyoming, identified exhibit 200, Dutton's disability determination, which stated that Dutton's primary disability was major depression. Exhibit 200 was the pink section of a multipart form kept in the ordinary course of business by Broyles' office. (Appendix for Appellants, Vol. II at 241). Exhibit 205 was a medical report prepared by the psychologist Dutton was referred to when he appealed his initial denial of benefits. The district court recognized that exhibit 205 contained hearsay; therefore, it was admitted under a limiting instruction in order to clarify the typographical error in exhibit 200 regarding the date of the onset of Dutton's depression and not for the truth of the matters asserted. Id. at 255.
 
 
 19
 Generally, failure to object to the admissibility of testimony waives review absent plain error. Fed.R.Evid. 103(a); United States v. Hill, 60 F.3d 672, 675 (10th Cir.), cert. denied, --- U.S. ---- (1995). Here, General Chemical failed to object to Broyles' testimony at trial. Absent objection, we review the admission of Broyles' testimony only for plain error, id., and we find no error. Additionally, after careful review of the record, we hold that the district court did not abuse its discretion in admitting exhibits 200 and 205.
 
 C.
 
 20
 General Chemical contends that even if the district court's admission of the evidence from the SSA was not reversible error, see part I.B., Dutton should be judicially estopped from arguing on appeal that his disability was caused solely by his depression. However, this court does not recognize the principle of judicial estoppel which "bars a party from adopting inconsistent positions in the same or related litigation." United States v. 49.01 Acres of Land, More or Less, Situate in Osage County, Okla., 802 F.2d 387, 390 (10th Cir.1986).
 
 D.
 
 21
 General Chemical contends that, if the award of back and front pay to Dutton is not tolled as of October 1, 1993, see part I.A., the amounts Dutton received as social security disability and pension benefits should have been deducted from the jury's verdict and that, although the district court determined that these amounts should be offset, the jury failed to consider them.
 
 
 22
 There is nothing in the record demonstrating how the jury computed the compensation award. No instructions were given to the jury which required it to deduct social security disability or pension benefits. Nor does the record indicate that General Chemical tendered or requested an instruction which would have required the jury to offset social security disability and pension benefits.[4] Similarly, there is no evidence in the record that the district court determined Dutton's damages should be offset by his social security disability and pension benefits. We will not impute error to the jury where it has been properly instructed and there is substantial evidence to support the verdict. See Whiteley, 719 F.2d at 1059; Rasmussen, 571 F.2d at 1149.
 
 II. Cross-appeal
 
 23
 On cross-appeal, cross-appellants contend that Instruction No. 25 misstated the law on age motivated discharge and that Instruction No. 13 misstated the law of Wyoming on modifications of employment contracts.
 
 
 24
 We review the record to "determine whether the instruction states the governing law and provides the jury with an ample understanding of the relevant issues and the applicable law." Street v. Parham, 929 F.2d 537, 539 (10th Cir.1991). "We do not determine whether instructions, on the whole, are flawless, 'but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to decide those issues.' " Phillips v. Duro-Last Roofing, Inc., 973 F.2d 869, 871 (10th Cir.1992) (citations omitted).
 
 A.
 
 25
 Cross-appellants contend that the jury was misled by Instruction No. 25 as to the rights provided to employees by the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. 621-634, for protection from age motivated discharge. Cross-appellants assert that a pure economic benefit to the employer resulting from discriminatory discharge of older, more senior, employees should not provide a carte blanc, instructionally stated, defense to their age discrimination claim.
 
 
 26
 Under the ADEA, it is unlawful for an employer to discharge any individual because of his or her age. See 29 U.S.C. 6223(a)(1). However, age must be the "determining factor" in the employer's challenged decision. Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir.1995). Therefore, "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S.Ct. 1701 (1993). "This is true even if the motivating factor is correlated with age, as pension status typically is." Id. at 1706.
 
 
 27
 In Hazen Paper, the Court addressed whether an employer's interference with the vesting of pension benefits violates the ADEA. Id. at 1705. The Court concluded that it did not "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age-based.' " Id. at 1707. Instruction No. 25 recites the Court's language in Hazen Paper and is a correct statement of the law which provided the jury with an ample understanding of the issue.
 
 B.
 
 28
 Cross-appellants contend that Instruction No. 13 was erroneous in rejecting the requirement that an employer may validly modify or rescind an existent contract of employment only when additional consideration for the contract change is provided to the employees. Cross-appellants argue the district court misinterpreted and misapplied Wilder v. Cody County Chamber of Commerce, 868 P.2d 211 (Wyo.1994), in instructing the jury that modification or recision of an employment contract is distinguishable from other contracts in that it is not necessary for the employer to tender consideration if the employer is justified in making the unilateral contract change or recision because it is "fair and equitable" in view of changed circumstances unanticipated when the contract was made.
 
 
 29
 As a federal court, sitting in diversity, the district court must ascertain and apply Wyoming substantive law with the objective that the result obtained in the federal court be the result that would be reached in a Wyoming court. Perlmutter v. U.S. Gypsum Co., 4 F.3d 864, 869 (10th Cir.1993) (applying Colorado law); Koch v. Shell Oil Co., 52 F.3d 878, 880 (10th Cir.1995) (applying Kansas law). We review this state law determination de novo. Perlmutter, 4 F.3d at 869.
 
 Instruction No. 13 provided:
 
 30
 In general, a promise by an employer or an employee under an existing contract to do more or to take less than the contract requires is invalid unless the other party gives sufficient consideration. That is, the other party must give or promise to give something in return for the modification of the contract. However, a modification of a contract may be enforced, even without consideration, if the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made. For example, changed economic conditions may render a modification to an employment contract valid, even if no additional consideration is given.
 
 
 31
 (Appendix for Appellants, Vol. I at 124) (emphasis added).
 
 
 32
 In Wilder, the Wyoming Supreme spoke directly to the need for consideration when the employer unilaterally modifies a contract of employment. In Wilder, the Board of Directors of the Cody County Chamber of Commerce modified Wilder's oral, implied in fact, employment contract by a memorandum without providing Wilder any additional consideration for the modification. Id. at 214-15. The Court concluded that the "traditional view recognizes that 'a promise by an employer or an employee under a subsisting contract to do more or take less than that contract requires is invalid unless the other party gives or promises to give something capable of serving as consideration.' " Id. at 219 (citations omitted).
 
 
 33
 Cross-appellants requested an instruction which complied with Wilder 's mandate that an employer could validly modify or rescind an existing contract of employment only when additional consideration for the contract change was provided to the employee. However, the district court overruled cross-appellants' objections to Instruction No. 13 stating:
 
 
 34
 Well, I think this: I think the Wyoming Supreme Court really wrote something in that Wilder decision that shouldn't be the law and is a bad statement when they said there has got to be other consideration. I don't think that ought to be the law, and I'm not going to do it that way.
 
 
 35
 It seems to me that the other decisions all say that you can revoke a handbook at any time. And I think that ought to be the law.
 
 
 36
 * * *
 
 
 37
 * * *
 
 
 38
 I have got another instruction that I am going to give in lieu of that additional consideration thing.
 
 
 39
 (Brief of Cross-appellants, Appendix C at 4-5).
 
 
 40
 In light of the Wyoming Supreme Court's decision in Wilder and the district court's statements, it is clear that Instruction No. 13 was an incorrect statement of Wyoming law. We can only assume that the jury relied on and followed the instruction. Consequently, we conclude that the jury was misled.
 
 
 41
 The jury found that cross-appellants each had a contract of employment with General Chemical based on the handbooks.[5] (Appendix for Appellants, Vol. I at 181, 183, & 184). Therefore, as a matter of law, cross-appellants could only be terminated for cause.
 
 
 42
 Under Wilder General Chemical was required to provide some form of consideration in order to validly revoke the contract/handbooks. Moreover, in its motion for a j.n.o.v., General Chemical conceded that "it is undisputed that [General Chemical] did not give anything, other than continued employment, to [cross-appellants] at the time it revoked the Handbook and SOP Manual." (Appendix for Appellants, Vol. I at 194). Accordingly, General Chemical's attempt to modify or rescind cross-appellants' employment contract by revoking the handbooks was invalid as a matter of law.
 
 
 43
 We remand for a new trial on the issue of whether there was or was not "cause" for cross-appellants' termination under their employment contract, and if no "cause" is found for a determination of damages, if any.
 
 Conclusion
 
 44
 We AFFIRM the jury's verdict and the judgment in favor of Dutton; AFFIRM the jury's verdict and judgment in favor of General Chemical on the cross-appellants' ADEA claims; and REVERSE the jury's verdict and judgment on cross-appellants' breach of contract claims, and REMAND for a new trial on the issue of whether there was or was not cause for cross-appellants' termination under their employment contract, and if no cause is found for a determination of damages, if any.
 
 
 45
 AFFIRMED IN PART, REVERSED IN PART and REMANDED.
 
 
 
 *
 The Honorable Frank M. Coffin, Senior United States Circuit Judge for the First Circuit, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Two additional plaintiffs, Travis Skaggs and Mike Phillips, did not appeal the jury verdict and judgment in favor of General Chemical
 
 
 [3]
 General Chemical appeals only the compensatory damages award. Therefore, we are not concerned with the $133,678 in other damages and limit our review accordingly
 
 
 [4]
 Fed.R.Civ.Proc. 49(b) specifically provides that "[t]he court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict."
 
 
 [5]
 It is not problematic that the jury did not find a breach of contract with respect to cross-appellants but did find a breach with respect to Dutton. This difference in findings could have been based, at least in part, on the additional evidence presented by Dutton in the form of his testimony that when he was transferred to Safety Coordinator, General Chemical assured him that he would have that position until he retired. See (Appendix for Appellant, Vol. II at 321-23)