James S. BRODIE, Larry A. Butcher and William A. Thompson, Appellants (Plaintiffs),

v.

GENERAL CHEMICAL CORPORATION, a Delaware corporation, Appellee (Defendant).

No. 96–151.

Supreme Court of Wyoming.

March 28, 1997.

Walter Urbigkit and George A. Zunker of Frontier Law Center, Cheyenne, for appellants.

Vincent A. Cino of Jackson, Lewis, Schnitzler & Krupman, Morristown, NJ; Alan B. Minier, Cheyenne, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Appellants James Brodie, Larry Butcher and William Thompson (Employees) brought suit in the United States District Court, District of Wyoming, against Appellee General Chemical Corporation (Employer) alleging that the termination of their employment constituted a breach of an implied contract formed by an employee handbook and a standard operating procedures manual. Before Employees were terminated, Employer had unilaterally revoked those documents and, at trial, Employees challenged the effectiveness of Employer's unilateral revocation. A panel of the United States Court of Appeals for the Tenth Circuit reversed a jury verdict in favor of Employer; however, that mandate was recalled by the court after another Tenth Circuit Court of Appeals panel issued an opinion in another case contradicting the opinion in this case. The United States Court of Appeals for the Tenth Circuit then submitted to this Court the following certified questions of Wyoming law:

1. Does the principle approved in *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 219 (Wyo.1994), that "a promise by an employer or an employee under a subsisting contract to do more or take less than that contract requires is invalid unless the other party gives or promises to give something capable of serving as consideration" apply in employee handbook contract cases?

2. If *Wilder* applies in employee handbook contract cases, what degree of con-

sideration is necessary to satisfy the requirement, i.e., is nominal consideration sufficient?

## FACTS

In 1986, when Employer took over the operations of Allied Chemical, the Employee Handbook and Standard Operating Procedures Manual (collectively the "handbooks"), which had been provided Employees earlier, were retained for plant operations. In May 1991, Employer revoked both handbooks to remove any contended employment rights beyond "at-will" contract status. In 1993, Employer eliminated Employees' positions as part of a reduction in force and they brought suit challenging the 1991 unilateral revocation and asserting breach of employment contract. The jury returned a verdict in favor of Employer with respect to the employment claims and Employees appealed.

Among other issues, Employees contended in the federal appeals court that the trial court had erroneously instructed the jury that an employer could validly modify or revoke an existing contract of employment without additional consideration. In its opinion, *Brodie v. General Chemical Corp.*, 74 F.3d 1248 (10th Cir.1996), the Tenth Circuit held that *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 219 (Wyo.1994), required Employer to have provided additional consideration in order to validly revoke the employee handbook the jury had found to be a contract of employment. On this issue, the Tenth Circuit reversed the jury's verdict and judgment on the breach of contract claim and remanded for a new trial on the issue of whether there was or was not cause for Employees' termination under their employment contract. A few days later, the Tenth Circuit issued an opinion, *McIlravy v. Kerr–McGee Corp.*, 74 F.3d 1017 (10th Cir.1996), which directly contradicted the appellate court's decision in *Brodie*. *McIlravy* held that our *Wilder* decision did not apply to handbook cases and additional consideration

was not required to modify or revoke a handbook. Employer petitioned the Tenth Circuit for recall of its mandate, that request was granted, and the court certified two questions of law for resolution by this Court.

## DISCUSSION

*Wyoming Implied Employment Contract Law*

█ In *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211 (Wyo.1994), we recognized that all employment occurs by either express contract or by some type of implied contract of employment. *Wilder*, 868 P.2d at 216. "There cannot be any serious dispute that there *is* a bargain of some kind; otherwise, the employee would not be working." 1 HENRY H. PERRITT, JR., EMPLOYEE DISMISSAL LAW AND PRACTICE § 4.32 at 326 (3d ed.1992). An implied contract of employment is a unilateral contract, meaning that the offeror's promise is accepted by performance, and does not involve mutuality of obligation between the parties. *Wilder*, 868 P.2d at 217, 1 PERRITT, *supra*, § 4.37. Wyoming presumes that an implied contract of employment for an indefinite period is a contract for at-will employment and the employer may discharge for any or no reason. *Loghry v. Unicover Corp.*, 927 P.2d 706, 710 (Wyo.1996). This presumption can be modified by an express or implied agreement of the parties. *Wilder*, 868 P.2d at 218; *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1062–63 (Wyo.1986). When an employer's specific representations orally made or contained in provisions in an employee handbook amount to an offer of job security or discharge procedures, we will enforce such a promise as an implied contract modification of at-will status.[1] *Leithead*, 721 P.2d at 1062–63.

█ To determine the contents of any particular implied contract of employment, we examine under an objective test whether

---

1. Our analysis today assumes that the representations are made after employment has begun and is, therefore, a modification. A different situation is presented when the representation is made at the time that employment begins. In that case, the representation, if enforceable, is a

term of the implied employment contract along with the other usual terms specifying pay, benefits, working hours, and job responsibilities under the rule that a single consideration can support several promises. Restatement (Second) of Contracts § 80(1) (1981).

the employer has intended, either by words or conduct, to include job security as part of the implied employment contract. *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 990 (Wyo.1991) (*McDonald II*). If an offer of job security can be inferred from an employer's representations, unilateral contract principles require that the offer be accepted and consideration exchanged. *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 706–07 (Wyo.1985). We have said that handbook provisions which promise job security create an expectation on the part of an employee, having the effect of inducing an employee to continue his employment. *Parks*, 704 P.2d at 707. Under unilateral contract principles, we have determined that an employee's continued employment is acceptance of and consideration for the new rights offered by the contract modification. The consideration which flows to the employer is the orderly, cooperative and loyal workforce which the employer hoped its promise would evoke. *Id.* Other courts have similarly acknowledged that because the most likely motive for an employer to make a promise of employment security to the workforce in general is that the promise will encourage employees to continue their employment, it is logical to view continued employment as acceptance of, and consideration for, such promise. 1 PERRITT, *supra*, § 4.37.

■■■ In Wyoming, an employer may, under certain conditions, amend an employee handbook promising job security if it had previously included language in its handbook reserving the right to unilaterally modify. *Lincoln v. Wackenhut*, 867 P.2d 701, 705 (Wyo.1994). The certified question presented in this case asks whether an employer may unilaterally modify when its employee handbook does not contain such a reservation. Employer contends that we have already implicitly answered this question in the affirmative but, should we disagree that is the case, Employer requests that we adopt the rule that an employer may unilaterally modify a handbook without additional consideration to the employee. As explained below, we have not implicitly recognized the rule advocated by Employer and today we decline to adopt such a rule.

## McDonald II Did Not Implicitly Recognize Unilateral Modification

The notion that this Court had implicitly recognized that an employer could unilaterally modify handbook provisions and restore at-will employment arose in *Durtsche v. American Colloid Co.*, 958 F.2d 1007, 1011 (10th Cir.1992). There, a Tenth Circuit Court of Appeals panel held that Wyoming courts would not apply traditional contract principles to prohibit an employer from unilaterally amending an employee handbook without the employee's express acceptance and additional consideration. It arrived at this conclusion after considering our decisions regarding the effect of one company's handbook in *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702 (Wyo.1985); *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866 (Wyo.1990) (*McDonald I*); and *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986 (Wyo.1991) (*McDonald II*). The panel reasoned that were this not the law, the Wyoming Supreme Court in the *McDonald* cases would not have considered whether the disclaimer in issue was conspicuous. In other words, the *Durtsche* panel assumed mistakenly that the disclaimer was a modification of a handbook to which McDonald had been subject before the attempted modification. The question becomes then, whether McDonald had in fact been a Mobil Coal Producing employee *before* the employer amended the handbook. As we explain below, he became a Mobil Coal Producing employee after the *Parks* handbook had been amended. The issue in McDonald's cases was whether that amendatory language was conspicuous.

Mobil Coal Producing distributed a handbook to Parks in September 1982, six months after his hiring. The handbook created job security; it abolished Parks' at-will status. *Parks*, 704 P.2d at 706–07. In *McDonald I*, we noted that McDonald's employment period was August 1987 until June 1988. *McDonald I*, 789 P.2d at 867. McDonald received the handbook after he started working. *Id.* at 868. The handbook contained a disclaimer stating that his employment was at-will. We noted that after our *Parks* decision Mobil Coal Producing had revised its handbook to provide that em-

ployment with it was at-will. *Id.* at 869. In a plurality decision, two justices decided that the promissory estoppel doctrine could apply as an exception to the at-will employment made evident by the disclaimer.[2] We noted that jury issues existed as to whether Mobil Coal Producing's handbook contained commitments (promises) of continued employment and whether McDonald reasonably relied to his detriment on those commitments (promises). *Id.* at 870.

In *McDonald II,* we noted that McDonald signed on July 20, 1987, an employment application form which included a disclaimer of any employment status other than at-will. We again noted the disclaimer language contained in the employer handbook, *viz.,* "this handbook ... is not a comprehensive policies and procedures manual, nor an employment contract." *McDonald II,* 820 P.2d at 989. We held that the attempted disclaimers in both the employment application form and the handbook "were insufficiently conspicuous to be binding on McDonald." *Id.* In his dissenting opinion, Justice Thomas pointed out that the employee handbook in question "was not adopted and issued after the time that McDonald was employed." *Id.* at 992. He could not understand how that handbook could amend the documented at-will employment status. He noted that McDonald signed the application form after Mobil Coal Producing had published and issued the handbook.

Taken together, *McDonald I* and *II* make clear that Mobil Coal Producing, the employer, revised its employee handbook from its "job security" nature in September 1982, when Parks was an employee, to its "at-will employment" nature before McDonald's hiring in August 1987. Thus, at the time of McDonald's hiring in August 1987, Mobil Coal Producing's employee handbook contained an "insufficiently conspicuous" disclaimer that employment was at-will.

Clearly, *McDonald I* and *McDonald II* were promissory estoppel and disclaimer cases, not unilateral amendment cases as the

*Durtsche* court thought. In *McDonald I* and *II,* the handbook did not purport to amend a "job security" status otherwise enjoyed by McDonald. The application form he signed and the handbook he received at the time he was hired purported that he was an at-will employee but they did so with inconspicuous language. The handbook discussed in *Parks* had been amended before McDonald was hired. In *McDonald II,* the sole question was whether the amendment which was in place before McDonald was hired was conspicuous. There was no need to first question whether Mobil Coal Producing had unilaterally amended a handbook during McDonald's period of employment. Thus, in *McDonald I and II,* we did not "implicitly" recognize that an employer can unilaterally amend handbook provisions to restore at-will employment.

### Contract Theory of Modification

We next address whether our decision in *Wilder* has resolved this issue. Employer contends that *Wilder* does not apply because it did not involve a handbook but rather an oral contract for employment allegedly expressly providing for job security. Employer contends that finding an implied-in-fact contract by recognition of handbook provisions involves an analysis which does not apply the normal contract law principles afforded to express contracts and further asserts that the distinction of express versus implied permits our applying different rules for modifying a handbook contract. The Michigan Supreme Court utilized an interpretation similar to Employer's argument in *In Re Certified Question, Bankey v. Storer Broadcasting,* 432 Mich. 438, 443 N.W.2d 112, 116 (1989). Michigan's *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880, 892 (1980), decision was one of the earliest decisions recognizing an employee handbook could constitute an implied contract for job security. *Parks* held *Toussaint* was authority for the proposition that consideration flowed to the employer and further analyzed that benefit

---

**2.** A third justice disagreed that promissory estoppel principles applied under the facts of the case and concurred in the result only. *McDonald I,* 789 P.2d. at 870 (Golden, J., specially concurring). Two other justices would have given effect to the handbook disclaimers and dissented. *Id.* at 871, 872 (Cardine and Thomas, JJ., dissenting).

to the promisor, an orderly, loyal and cooperative workforce, is sufficient consideration for a contract. *Parks,* 704 P.2d at 707. In *Bankey,* the Michigan Supreme Court interpreted *Toussaint* to permit unilateral modifications because handbook promises were not enforceable under a contract theory, but rather under broad public policy considerations. *Bankey,* 443 N.W.2d at 119–120.

The *Bankey* rationale is inapposite for our purposes because, as explained above, our handbook decisions hold that an implied employment contract does arise from established contract law principles and our contract law concerning modification is well settled that an agreement altering a written contract, to be binding, must be based on consideration. *Harvard v. Anderson,* 524 P.2d 880, 883 (Wyo.1974). In *Wilder,* we explained that established contract law principles apply to the employment contract whether express or implied. *Wilder,* 868 P.2d at 219. Employer contends that these principles should not be extended to an implied contract based upon an employment handbook because it will result in an employer's potentially facing the great difficulty and confusion of having to negotiate employment contracts on an individual basis if it is not permitted to unilaterally modify. We agree with the rationale of the Connecticut Supreme Court in *Torosyan v. Boehringer Ingelheim Pharm.,* 234 Conn. 1, 662 A.2d 89, 99 (1995), which resolved the issue of whether an employee by his continued employment had consented to a unilateral modification of the employee handbook to amend the job security provision. *Torosyan* concluded that in the case of an implied employment handbook contract, permitting a unilateral modification of a right to job security would substantially interfere with an employee's valuable contractual right. *Id.* It further noted that an employee whose preexisting contract provided job security would have no way to insist on those contractual rights. *Id.* "The employee's only choices would be to resign or to continue working, either of which would result in the loss of the very right at issue—that is, the loss of the right to retain employment until terminated for cause." *Id.* Also relying on contract principles, *Robinson v. Ada S.*

*McKinley Community Services,* 19 F.3d 359 (7th Cir.1994), rejected that an employee's continued employment sufficed as acceptance and consideration because, in essence, the employee is merely performing duties under the preexisting contract. *Id.* at 364. *Robinson* also recognized that it asked too much to require an employee to preserve his or her rights under the original employment contract by quitting working. *Id.*

Were we to decide this issue on notions of fairness, the equities would favor the employees as we do not consider the employer's concern about negotiating employment contracts on an individual basis significant enough to outweigh our understanding that employees would risk losing a valuable contractual right without their consent. Established contract law principles require that we answer the first certified question in the affirmative. The principle of additional consideration discussed in *Wilder* does apply to a modification of an employment handbook which restores at-will status.

### Degree of Consideration

We perceive the second certified question as asking whether continued employment will suffice as consideration for a modification which restores at-will status. As just explained, the answer is no, separate consideration must be provided. A valid modification requires an offer, acceptance, and consideration. *Robinson,* 19 F.3d at 364; *see Harvard,* 524 P.2d at 883. Consideration to modify an employment contract to restore at-will status would consist of either some benefit to the employee, detriment to the employer, or a bargained for exchange. *Robinson,* 19 F.3d at 364. The question of what type of consideration is sufficient cannot be answered with specificity because we have long held that absent fraud or unconscionability, we will not look into the adequacy of consideration. *Laibly v. Halseth,* 345 P.2d 796, 799 (Wyo.1959). As long as the consideration given meets the definition of legal consideration, it will be considered sufficient consideration. *See Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 541 (Wyo. 1993) (listing examples of separate consider-

ation sufficient to support a covenant not to compete).

## CONCLUSION

The answer to the first certified question is yes, the principle of additional consideration discussed in *Wilder* applies when an employer modifies an implied job security provision to restore at-will status. The answer to the second certified question is no, continued employment will not suffice as consideration for the modification. New, separate consideration must be provided which constitutes either a benefit to the employee, a detriment to the employer or a bargained for exchange.