**LeRoy McILRAVY, Allen Lee Mahoney, Richard E. Massman, and Robert H. Gray, Plaintiffs–Appellants,**

v.

**KERR-McGEE CORPORATION, Defendant,**

and

**Kerr-McGee Coal Corporation, a Delaware corporation, Defendant–Appellee.**

No. 94–8080.

United States Court of Appeals, Tenth Circuit.

July 28, 1997.

Stephen H. Kline of Kline & Jenkins, Cheyenne, WY, (Kenneth E. Barker of Quinn, Eiesland, Day & Barker, Belle Fourche, South Dakota, with him on the briefs), for Plaintiffs–Appellants.

Carolyn Gregg Hill (Shelia D. Tims with her on the brief) of Andrews, Davis, Legg, Bixler, Milsten & Price, Oklahoma City, OK, for Defendant–Appellee.

Before TACHA and SETH,[*] Circuit Judges, and BROWN, District Judge.[**]

BROWN, District Judge.

█ The plaintiffs are four individuals who contend their employment was wrongfully terminated by defendant Kerr–McGee Coal Corporation. Plaintiffs' amended complaint, alleging diversity jurisdiction, asserted three causes of action under Wyoming law: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) promissory estoppel. The district court granted Kerr–McGee Coal's motion for summary judgment as to the first two claims, while the promissory estoppel claim was submitted to a jury. The jury returned a verdict in favor of Kerr–McGee Coal and the district court entered judgment accordingly. On appeal, plaintiffs contend the district court committed error with respect to all three claims.

This appeal has a lengthy history. The panel initially entered an opinion affirming the judgment. *See McIlravy v. Kerr–McGee Corp.*, 74 F.3d 1017 (10th Cir.1996). It was subsequently discovered, however, that shortly before our ruling another Tenth Circuit panel had filed an unpublished opinion taking a contrary view of an employer's ability under Wyoming contract law to amend an employee handbook. *See Brodie v. General Chemical Corp.*, 1996 WL 11838, Nos. 94–8094 & 94–8095 (10th Cir., Jan. 12, 1996). Due to this conflict, the *Brodie* opinion was withdrawn and the contract questions in that case were certified to the Wyoming Supreme Court. *See Order filed June 11, 1996.* The opinion in the instant case was likewise withdrawn and the mandate was recalled, with the case held in abeyance pending the Wyoming Supreme Court's ruling on the certified questions. *See McIlravy v. Kerr–McGee Corp.*, 98 F.3d 1255 (10th Cir.1996). Recently, the Wyoming Supreme Court responded to the certified questions with an opinion essentially endorsing the view of the *Brodie*

[*] The late Honorable Oliver Seth, United States Senior Circuit Judge, heard oral argument and participated in the panel's initial opinion, but passed away prior to final resolution of the appeal. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. *See*

*United States v. Quentin,* 106 F.3d 1516 (10th Cir.1997).

[**] The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

panel. *See Brodie v. General Chemical Corp.,* 934 P.2d 1263, 1997 WL 139377 (Wyo., Mar.28, 1997). With the benefit of this opinion, we now reconsider the issues at hand. We find that the district court's ruling on the breach of contract claim must be reversed and remanded to the district court. Plaintiffs' other two claims are not affected by the Wyoming Supreme Court's opinion; we therefore readopt our previous opinion with respect to those claims.

### Breach of Contract Claim.

Each of the plaintiffs began his employment with Kerr–McGee Coal between 1976 and 1978 at the Jacobs Ranch Mine south of Gillette, Wyoming. By 1992, each plaintiff had advanced to a first-level supervisory position. In March of 1992, plaintiffs were terminated as part of "Streamline Phase II," a plan by Kerr–McGee Coal to reduce its workforce at the Jacobs Ranch Mine. The plaintiffs, along with other individuals, were selected for termination based upon job performance rankings compiled by the company. Plaintiffs were at the bottom of the rankings for supervisors in their respective departments. The company retained some supervisors who had less seniority than the plaintiffs but who had better performance rankings.

During plaintiffs' tenure at the Jacobs Ranch Mine, Kerr–McGee Coal had issued a series of employee handbooks, including 1976, 1977, 1980, 1985 and 1988 editions. There is no dispute that plaintiffs received these handbooks. Plaintiffs' primary contention is that the initial handbook they were issued—either the 1976 or 1977 edition—contained language promising that they would be terminated only for "cause." Moreover, although plaintiffs concede that the

handbooks informed them that there could be a reduction in force by the company, they contend the handbooks promised that any layoffs would be made in order of seniority. Plaintiffs argue that Kerr–McGee Coal breached these promises. As to Kerr–McGee Coal's 1985 and 1988 handbooks, each of which contained a disclaimer stating that the handbook was not an employment contract, plaintiffs contend these were invalid attempts by the company to "unilaterally modify" their existing contractual rights without any supporting consideration.

In ruling on the motion for summary judgment, the district court only found it necessary to address the effect of the 1976 and 1977 handbooks.[1] The court found nothing in these handbooks to alter the presumption under Wyoming law that an employee serves at the will of the employer. The handbooks' references to employees becoming "permanent," the court said, were not sufficient to alter plaintiffs' status. Accordingly, the court granted the defendant's motion for summary judgment on the grounds that plaintiffs were "at-will" employees who could be fired at any time, with or without cause.

We review a district court's granting of summary judgment *de novo* and apply the same legal standard used by the district court. *Hatfield v. Board of County Commissioners for Converse County,* 52 F.3d 858, 862 (10th Cir.1995). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate only if the record, viewed in the light most favorable to the non-moving party, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1607, 26

---

**1.** Prior to summary judgment, the district court had granted defendant's motion to dismiss the breach of contract claim on the basis of the disclaimer in the 1988 handbook. The court held that the disclaimer was "conspicuous" and was effective to negate any employment contract otherwise implied in the handbook. In so finding, the court was consistent with its holding in a similar case, *Hein v. Kerr–McGee Coal Corporation,* 809 F.Supp. 84 (D.Wyo.1990), *aff'd,* 956 F.2d 278 (10th Cir.1992) (unpublished).

The court's ruling on the motion to dismiss apparently assumed that the 1988 handbook, the last version issued by the employer, governed the

breach of contract claim. After their claim was ordered dismissed, plaintiffs filed an amended complaint and argued that an employment contract had been created by the 1976 and 1977 books and that the 1988 handbook could not "unilaterally modify" the prior contract. Because the district court held that the 1976 and 1977 books failed to alter the at-will presumption, it was unnecessary for the court to determine which version of the handbook governed the plaintiffs' claim or to determine whether the 1988 disclaimer could modify an existing implied employment contract.

L.Ed.2d 142 (1970)). The substantive law of Wyoming governs the plaintiffs' claims in this diversity action. *See Budd v. American Excess Ins. Co.,* 928 F.2d 344, 346 (10th Cir.1991).

We conclude that a genuine issue of material fact exists as to whether Kerr–McGee Coal's 1976 and 1977 handbooks implied that employees would not be dismissed in the absence of "cause." It is true that the general presumption under Wyoming law is that employees serve at the will of their employers. *Sanchez v. Life Care Ctrs. of Am., Inc.,* 855 P.2d 1256, 1257 (Wyo.1993). And, as the district court recognized, a promise of "permanent" employment by itself is not sufficient to alter the at-will presumption. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 218 (Wyo.1994). An employee handbook may alter the presumption, however, if its terms reasonably create an expectation on the part of an employee that the company will not discharge him without cause. *See Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702, 707 (Wyo.1985).

The 1976 and 1977 handbooks contained more than just a representation that employees were considered permanent. Upon beginning employment, the plaintiffs were given a lengthy orientation session during which the handbook, referred to by company representatives as the employees' "bible," was covered in detail. The handbook itself stated that it "will acquaint you with certain Company practices and benefits, and your responsibilities as a Kerr–McGee employee," and when questions about such matters arise "the spirit and intent behind these statements will serve as the basis for solutions." The handbooks informed employees that they would become permanent after completing a ninety-day "probationary period." They explained that a permanent employee is one who after successfully completing the probationary period "is expected to remain in the employment of the Company indefinitely." *Cf. Leithead v. American Colloid Co.,* 721 P.2d 1059, 1063 (Wyo.1986) (Distinction between probationary and permanent employee, with an explanation that a probationary employee may be discharged at any time during the probationary period, was suffi-

cient to imply that a permanent employee could only be discharged for cause.) The handbooks explained that "an employee's seniority will be broken and employment terminated" for any of eight specific reasons, including "discharge." In a section entitled "Conduct on the Job," the handbook listed eleven "Examples of Misconduct Which Generally Result in Discharge for A Single Violation" and twelve "Examples of Misconduct Which Generally Result in Disciplinary Action Less than Discharge for a Single Violation." An introductory paragraph to these examples stated that "[t]he company may also apply disciplinary action up to and including discharge for other valid reasons." *Cf. Leithead,* 721 P.2d at 1063 ("By listing misconduct that could result in discharge, the handbooks imply that cause is required."). The examples of misconduct were followed by a systematic procedure for disciplinary actions against employees including a "first notice," for which an employee was warned that an additional violation would result in three days off without pay; a "second notice," for which an employee was assessed three days off without pay and warned that an additional violation would result in discharge; and a "third notice," for which an employee would be discharged. *See Sanchez,* 855 P.2d at 1259 ("Detailing stages of progressive discipline results in a further implication that cause is required to discharge.") Nowhere in the 1976 and 1977 handbooks was it made clear that the company was not bound by the procedures in the handbook or that despite the general application of such policies the company intended to retain the absolute right to discharge employees at any time with or without cause. Taken as a whole, the 1976 and 1977 handbooks are sufficiently ambiguous that they could be said to have reasonably created expectations on plaintiffs' part that the company had promised not to discharge employees absent cause for the dismissal.

Kerr–McGee argues that disclaimers added to the handbooks after 1977 make clear that plaintiffs were at-will employees. Under the standards of the Wyoming Supreme Court in *Brodie,* summary judgment on this issue would be inappropriate because

defendant has failed to show that the disclaimers added after 1977 modified what we assume for purposes of summary judgment was a pre-existing employment contract with plaintiffs.[2] Under *Brodie,* a valid modification of an employment contract, including a contract implied from an employee handbook, requires an offer, acceptance, and consideration. *See Brodie,* 934 P.2d 1263, 1268. As far as consideration is concerned, an employee's continued employment will not suffice for a modification that restores at-will status; separate consideration must be provided. *Id.* at 1269. Kerr–McGee has not shown it is entitled to summary judgment under these standards. A genuine dispute of material fact remains as to whether the plaintiffs' employment contract with the defendant included a promise that they would not be terminated without cause and whether the defendant breached such a promise.

Notwithstanding the adoption of a general "cause" standard for dismissals, the 1976 and 1977 handbooks did inform employees that they could be terminated for certain other reasons, including layoffs arising from a reduction in force.[3] In our initial opinion, we found that plaintiffs were properly selected for termination under the reduction in force provisions of the 1988 handbook. We applied the 1988 book instead of earlier versions because we found that the company had the right to unilaterally modify its handbook. This view of contract modification is not viable in light of the Wyoming Supreme Court's *Brodie* opinion and Kerr–McGee has not shown that the changes to the handbooks were effective under *Brodie.* Accordingly, we reconsider plaintiffs' claim under the provisions of the 1976 and 1977 handbooks.

The provisions on reduction in force in the 1976 and 1977 handbooks stated in part that "[i]f a job is eliminated or an operation reduced, the determination of the employee or employees to be demoted or laid off will be made on the basis of qualifications and seniority." The books also included the following subparagraphs on demotions and layoffs:

### A. *Demotions*

Demotions in a progression line required by reduction in force will generally be made in the reverse of the normal order of promotion. An employee demoted to a lower classification will carry back all earned classification seniority. Employees will, on the basis of qualifications and Classification Seniority, successively demote downward through the classifications of the affected progression line. An employee who is displaced from a progression line by this demotion procedure may only displace an employee with less Company Seniority who occupies either another entry level classification in a progression line or the lowest rated non-progressional classification(s), provided the employee has the qualifications to perform the work of such classification.

### B. *Layoffs*

Layoffs will be made from the entry level classifications in progression lines or from non-progressional classifications. An employee subject to being laid off from the higher rated non-progressional classification(s) may only displace an employee with less Company Seniority who occupies either an entry level job in a progression line or the lowest rated non-progressional classification(s), provided the employee has the qualifications to perform the work of such classification.

This provision indicates that the company would take seniority into account in selecting employees for layoffs. As we noted in our initial opinion, it can also reasonably be con-

---

**2.** In our initial opinion, we found a genuine issue of material fact as to whether these disclaimers were sufficiently unambiguous to be effective. Because we now find a genuine factual issue on the preliminary question of whether the disclaimers became part of the contract, we base our ruling on the preliminary issue.

**3.** Although these handbooks could be interpreted as saying that an employee subjected to a reduc-

tion in force would—at least initially—either be demoted or laid off rather than be terminated, plaintiffs have not argued, either here or in the district court, that the company breached the contract by terminating them instead of placing them on layoff status. Rather, plaintiffs argue that the company violated the handbook's provisions concerning the use of seniority in determining who would be laid off.

strued as representing that the company would make layoffs in order of seniority, if the conditions above were met. Plaintiffs contend that the company's selection of them for termination breached these representations. They have cited evidence that the company went strictly by performance rankings when it selected them for termination and that it gave no consideration at all to seniority. *See* Aplt.App., Vol. III at 12. Under the circumstances, we agree with appellants that genuine issues of material fact exist as to whether Kerr–McGee Coal performed according to the representations in the handbook. Accordingly, the summary judgment in favor of defendant on the breach of contract claim must be reversed and remanded to the district court for further proceedings consistent with this opinion.

### Covenant of Good Faith.

■ Plaintiffs' second claim alleged that Kerr–McGee Coal breached an implied covenant of good faith and fair dealing by terminating them. Plaintiffs argued that their tenure of approximately fifteen years with Kerr–McGee Coal and their various actions in reliance on the belief that they had secure employment established "a special relationship of trust and reliance" sufficient to support a cause of action for the tort of breach of good faith. The district court granted summary judgment on this claim after concluding plaintiffs had failed to show sufficient evidence of the "special relationship" required by Wyoming law. We agree with the district court.

■ Under Wyoming law, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *Wilder,* 868 P.2d at 220. "Good faith" means "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *Id.* (*citing Restatement (Second) of Contracts* § 205 at 100 (1981), comm. a.). The scope of this covenant is limited in the context of employment contracts, however; it does not create a duty for the employer to terminate an employee only for good cause, nor does it mandate that every termination must be for a fair and honest reason. *Wilder,* 868 P.2d at 221. To rise to the level of a tortious breach, the plaintiff must show that a "special relationship of trust and reliance exists between the particular employee seeking recovery and the employer." *Id.* (*citing Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722, 729 (1980)). Trust and reliance may be found by the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service. *Id.*

The *Wilder* Court cited *K–Mart Corp. v. Ponsock,* 103 Nev. 39, 732 P.2d 1364 (1987) as an example of the special relationship necessary to support a cause of action. *Wilder,* 868 P.2d at 221–22. In *K–Mart,* the employer terminated a nine-year employee six months before his retirement benefits vested and did so with the improper purpose of denying him these contractually earned benefits. *See id.* By contrast, the plaintiff in *Wilder* had no claim for tortious breach where he had been employed three years at the time of his termination and there was "no evidence that the termination occurred as a means to avoid payment of benefits already earned under the contract of employment." *Id.*

We agree with the district court that plaintiffs failed to produce sufficient evidence to support a cause of action for breach of good faith. It was interference with "rights accruing with longevity of service," not length of service alone, that formed the basis of the claim in *K–Mart.* As the district court noted, *Wilder* requires at least some evidence of improper motive before an employee's termination can be characterized as an act of bad faith. There is no dispute here that the plaintiffs were terminated because of a reduction in force by the company. The plaintiffs failed to submit any evidence of improper motive and the district court properly granted summary judgment on this claim.

### Promissory Estoppel.

■ Plaintiffs' claim of promissory estoppel was submitted to and rejected by a jury. Plaintiffs' final argument is that the district

court erred by giving the jury a special verdict form that misstated the promissory estoppel claim. In particular, plaintiffs point to an interrogatory that asked the jury whether the defendant had made clear and definite representations to each plaintiff "as to the terms and duration of their employment." Plaintiffs argue that the use of the conjunctive "terms *and* duration" required them to prove two claims, either of which would have been sufficient on its own to permit recovery.

Having reviewed the record submitted on appeal in its entirety, we conclude that plaintiffs have demonstrated no prejudice from the manner in which their claim was presented to the jury. The jury was instructed in detail concerning the plaintiffs' contentions, including the allegation that the defendants made representations as to the "terms and duration" of plaintiffs' employment. The phrase "terms and duration" had been adopted by the district court, after much discussion between the parties, as a shorthand way of summarizing plaintiffs' allegations. Plaintiffs' counsel did not object to the use of this language in the instructions. *See* R. Vol. III at 470–71. The instruction on estoppel explained in part that to find for the plaintiffs, the jury must find that defendants made clear and definite representations to each plaintiff as to the terms and duration of their employment and that each plaintiff "reasonably relied on one of these oral and/or written representations to their detriment." Taken as a whole, the instructions and the verdict form fairly presented plaintiffs' claims. We see no danger that the jury misunderstood plaintiffs' contentions or the requirements of promissory estoppel.

*Conclusion.*

The district court's grant of summary judgment is REVERSED with respect to plaintiffs' claim for breach of contract. That claim is remanded to the district court for further proceedings consistent with this opinion. The district court is AFFIRMED in all other respects.