F I L E D
United States Court of Appeals
Tenth Circuit

MAY 21 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SPERRY MARKETING, INC.,

     Plaintiff-Appellant,

v.

NEWCO, INC.; SWING N SLIDE
CORPORATION,

     Defendants-Appellees.

No. 97-3101
(D.C. No. 96-2155-GTV)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON** and **KELLY**, Circuit Judges, and **BRETT**, District Judge.[†]

Plaintiff-Appellant Sperry Marketing appeals the entry of summary

judgment dismissing its diversity action for breach of contract against defendants-

appellees Newco and Swing N Slide (Swing N Slide). Swing N Slide succeeded

Newco by merger in 1992. Sperry claimed Swing N Slide violated its

Independent Sales Representative Agreement (Agreement) under which Sperry

sold Swing N Slide's products. The district court held Sperry was equitably

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[†] The Honorable Thomas R. Brett, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation.

estopped to assert breach of the contract, noting Sperry failed to address equitable estoppel in its response to the summary judgment motion. On appeal Sperry argues the district court erred in granting summary judgment on the basis of equitable estoppel. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

The following facts are either uncontested or are presented in the light most favorable to Sperry. In October 1990, Sperry and Swing N Slide entered into a written contract, the Agreement, under which Sperry became a sales representative for Swing N Slide's products in return for a five percent sales commission. Sperry's sales territory consisted of Arkansas, Iowa, Kansas, Louisiana, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, and Texas. The Agreement was for an indefinite term, and was terminable at will by either party with one month's notice.

In April 1992, Swing N Slide informed Sperry in writing that it was reducing Sperry's commission for sales on its Builders Square account from five percent to three percent. Sales commissions on all other accounts remained at five percent. Sperry's president, Thomas Sperry, submitted an affidavit in which he attests he "personally objected to each of the unilateral changes in the contract." Aplt. App. at 150. In his deposition, Mr. Sperry testified that he could recall no specific discussion with Swing N Slide about this change, but he was

generally upset and was sure he called and said so. See id. at 49. He testified this was not a specific recollection, but said, "I think it's something I think I probably did." Id. Following this reduction, Sperry accepted checks based on the reduced commission for more than three years, until the relationship was terminated.

In May 1992, Swing N Slide notified Sperry in writing that it was removing Arkansas, Louisiana, Minnesota, North Dakota, South Dakota, and Texas from Sperry's sales territory. Sperry again expressed its displeasure to Swing N Slide. Mr. Sperry's account of his discussion with a Swing N Slide officer was, "We asked, you know, why and we'd always done a good job and it seems like this is what we got for a reward for a job well done." Id. Mr. Sperry had dinner with a Swing N Slide officer in which he tried to persuade Swing N Slide to give back the commission and territory. Mr. Sperry testified that he did not recall saying anything to the effect that Sperry was violating the Agreement by taking away territory. See id. at 50. "The arguments," Mr. Sperry stated, "were—had more to do with the job we were doing . . . ." Id.

Mr. Sperry continued some sales efforts in Texas after the territory reduction, and maintained two full-time salespeople in Texas selling other products Sperry represented. Mr. Sperry stated in his affidavit that it would have required little additional expense to continue marketing Swing N Slide products in

Texas. Nevertheless Sperry sent four letters to various accounts in Texas stating, "Regretfully, on June 30, 1992 we will no longer represent Newco Swing-N-Slide with your company." Id. at 73-76. In April 1993, Swing N Slide sent Sperry a note confirming its territory and other information. A cover letter requested that the note be faxed back to Swing N Slide with all corrections marked on it, or, if everything was correct, that it be faxed back with the notation "OK." On Mr. Sperry's return fax he had written, "OK Fax back" above his signature. Sperry continued to accept commission checks from Swing N Slide based on the decreased sales area. Swing N Slide, meanwhile, engaged other sales representatives to cover the area it took from Sperry, paying $538,104.77 in commissions to the new representatives over the remainder of the time the Agreement was in effect.

Finally, in March 1995, Swing N Slide informed Sperry by letter that effective April 15, 1995, Sperry's sales commission on all sales would be cut to three percent. Three Sperry officers travelled to Janesville, Wisconsin to make a presentation to Swing N Slide. In the materials they presented was a statement in bold type referring to the prior territory and commission reductions: "Newco portrayed, and we eventually accepted, that these changes were for the betterment of the company." Id. at 94. Mr. Sperry's affidavit states that the word "accepted" meant "believed," not "agreed to." Id. at 149. Swing N Slide partially relented,

allowing certain commissions to remain at five percent.  Sperry continued to accept commission checks reflecting the reduction after April 15, 1995.  Between 1992 and 1995 Sperry accepted $1.2 million in commissions from Swing N Slide. There is no evidence of any written objection to Swing N Slide's reductions of commissions or territory.

In September, 1996 Swing N Slide sent notice to Sperry that it was terminating the Agreement.  Sperry does not challenge the termination.

We review the grant of summary judgment de novo, applying the same legal standard used by the district court.  See McIlravy v. Kerr-McGee Corp., 119 F.3d 876, 879-80 (10th Cir. 1997).  Summary judgment is appropriate only if the record, viewed in the light most favorable to the non-movant, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See id.; Fed. R. Civ. P. 56(c).  If there is no genuine issue of material fact, we next determine whether the substantive law was correctly applied. See Law v. NCAA, 134 F.3d 1010, 1016 (10th Cir. 1998).  The parties agreed, and the district court correctly held, that the substantive law of Wisconsin governs this action.  See Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1360 (10th Cir. 1990).

Although one of the grounds upon which Swing N Slide moved for summary judgment was equitable estoppel,  Sperry's response to the summary

judgment motion failed to address equitable estoppel. In its motion for reconsideration, which we consider as made pursuant to Fed. R. Civ. P. 59(e), Sperry attempted to remedy this failure, presenting to the court for the first time facts and argument on equitable estoppel. The district court denied the motion, relying on the rule that a party may not raise new theories or arguments on reconsideration that were available to it at the time the original motion was briefed. See Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991), cert. denied, 506 U.S. 828 (1992).

A similar rule governs Sperry's appeal of the issue of equitable estoppel. Absent unusual circumstances, a party may not raise in the court of appeals an argument which it did not present to the district court until a motion for reconsideration. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721-22 (10th Cir. 1993); Burnette v. Dresser Indus., 849 F.2d 1277, 1285 (10th Cir. 1988). Because Sperry did not argue equitable estoppel to the district court until its untimely motion, and consequently the district court was not properly given the opportunity to consider and dispose of the arguments, we will not consider them on appeal. See Burnette, 849 F.2d at 1285.

This rule is tempered somewhat by our de novo review of a grant of summary judgment to ensure that the district court correctly applied the substantive law. See Law, 134 F.3d at 1016. Moreover, we may notice plain

error in this context if the error would seriously affect the fairness, integrity or public reputation of judicial proceedings. See Glenn v. Cessna Aircraft Co., 32 F.3d 1462, 1464 (10th Cir. 1994); see also Daigle v. Shell Oil Co., 972 F.2d 1527, 1539 (10th Cir. 1992).

Wisconsin has defined equitable estoppel as "(1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment." Milas v. Labor Ass'n, 571 N.W.2d 656, 660 (Wis. 1997). The party asserting estoppel as a defense has the burden of proving it by clear, satisfying, and convincing evidence, see Gabriel v. Gabriel, 204 N.W.2d 494, 497 (Wis. 1973) and any reliance must have been reasonable, see Consumer's Co-op v. Olsen, 419 N.W.2d 211, 222 (Wis. 1988).

Viewing all the evidence in the light most favorable to Sperry, we agree with the district court that Swing N Slide met its burden of demonstrating that no genuine issue of material fact exists with respect to estoppel, and that under Wisconsin law it is entitled to judgment as a matter of law. The record demonstrates that Sperry's actions and affirmative representations indicated to Swing N Slide that it had acceded to the modifications. Although Sperry attempted to persuade Swing N Slide to reconsider, there is no evidence of an adequate objection on the basis of its contract. See Milas, 571 N.W.2d at 660

(holding estoppel was established based on course of conduct and failure to object). These actions and non-actions by Sperry, over the four-year period between the first modification and the termination of the contract, reasonably induced Swing N Slide to engage replacement sales representatives and pay them $538,104.77 in commissions, to its detriment. Although Sperry at all times had the right to decline to accept the new terms or to terminate the Agreement, it never did so. Silence and the failure to exercise rights alone may reasonably be relied upon to establish estoppel. See Consumer's Co-op, 419 N.W.2d at 221 ("Defendants had the right to rely on plaintiff's failure to exercise its right.").

Mr. Sperry's affidavit stating that he personally objected to each modification is a conclusion that states no specific fact from which a jury could find an objection was made so as to preclude reasonable reliance by Swing N Slide. Sperry cannot survive summary judgment by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888-89 (1990). Moreover, Mr. Sperry's affidavit conflicts with his deposition testimony, in which he stated he had no specific recollection of making an objection to the first modification, but thinks he probably made a telephone call to express his displeasure. Although the court ordinarily may not discount an affidavit, a party cannot create an issue of fact by submitting an affidavit which differs without

explanation from the affiant's deposition.  See Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986).  We conclude as a matter of law that Sperry's conduct was inconsistent with the terms of the original contract to such a degree as to compel a finding that Swing N Slide reasonably relied upon Sperry's conduct to its detriment, so that Wisconsin's equitable considerations prohibit Sperry from asserting its contract rights.  The district court correctly applied the substantive law, and we find no plain error.

AFFIRMED.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge