Jerry M. WORLEY, Appellant (Plaintiff),

v.

WYOMING BOTTLING COMPANY, INC., d/b/a Coca–Cola of Casper, Appellee (Defendant).

No. 98–123.

Supreme Court of Wyoming.

March 23, 2000.

618

Representing Appellant: Jeffrey C. Gosman of Gosman Law Offices, Casper, WY. Argument by Mr. Gosman.

Representing Appellee: Marvin L. Tyler and B. Joan Dodd of Bussart, West, Rossetti, Piaia & Tyler, PC, Rock Springs, WY. Argument by Ms. Dodd.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

Jerry Worley contends that, after fifteen and a half years of faithful service, he was fired by appellee Wyoming Bottling. In turn, he filed suit claiming breach of employment contract, promissory estoppel, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. The trial court granted Wyoming Bottling summary judgment on all claims. Because we conclude that disputed issues of material fact remain on Worley's claims for breach of contract, promissory estoppel, and intentional infliction of emotional distress, we reverse and remand.

## ISSUES

We adopt the statement of issues presented by appellee Wyoming Bottling, Inc. d/b/a Coca–Cola of Casper (Wyoming Bottling):

* Retired November 2, 1998.

A. Did the trial court properly rule that the Appellant was an at-will employee at all times while employed by the Appellee?
B. Did the trial court properly rule that the Appellant failed to establish a cause of action for promissory estoppel?
C. Did the trial court properly rule that the Appellant failed to establish a cause of action for breach of the implied covenant of good faith and fair dealing?
D. Was the trial court correct in ruling that the Appellant failed to establish a cause of action for intentional infliction of emotional distress?

## FACTS

In accord with our standard of review, we present the facts in the light most favorable to Worley. When hired by Wyoming Bottling in May of 1980, Worley completed an employment application which contained an at-will employment disclaimer. Worley assumed the position of sales manager for the soft drink distributorship shortly after being hired, where he remained until his claimed firing in January of 1996. During his tenure, Worley established an exemplary work record, using three sick days in fifteen and a half years while earning numerous commendations, awards, and raises.

Also during Worley's tenure, Wyoming Bottling issued other at-will disclaimers. In 1991, Worley signed a non-compete agreement which included at-will employment language. Additionally, Wyoming Bottling issued an employee handbook in 1993 which contained several at-will employment disclaimers. The legal effect of these disclaimers, as well as the one contained in the 1980 application, is at issue in this appeal.

In 1995, due to increased sales goals and termination threats, Worley's work environment became stressful. After Worley's supervisor, area manager Herb McDonald, resigned, Worley began to question his own job security and spoke with Joe DeCora, the company president, about job security. Worley explained to DeCora that he was planning to make some major financial commitments, but first wanted to ensure that his job was

secure. In his deposition, Worley testified that DeCora told him to make the financial commitments; that his job was secure; and the job would remain available to Worley as long as he wanted it. Following this discussion, Worley met for lunch with DeCora and the recently resigned McDonald. During lunch, and in McDonald's presence, DeCora's promise of job security was restated, as confirmed by McDonald's affidavit. In the same affidavit, McDonald asserts that Worley was the only employee left in the Casper office with the ability and experience to run the office until McDonald's successor could be found. It thus, McDonald explained, would have been difficult for Wyoming Bottling, without Worley, to continue normal operations for some time.

In December of 1995, Worley borrowed $18,000 by refinancing his home loan, using the proceeds to purchase a new car and new appliances for his home. Before finalizing the loan, Worley checked with his direct supervisor, Butch Gibson, to verify that his job performance was satisfactory. According to Worley, Gibson stated that everything was fine and "to go on about my affairs." In January of 1996, Wyoming Bottling demoted Worley one position level to route manager. The demotion included the loss of use of a company car, loss of use of a company credit card, and an $11,000 reduction in annual salary. Since Gibson had told him in December his work was fine, Worley was confused about the demotion and contacted DeCora. The parties contest what occurred during that conversation. Worley claims that DeCora fired him, repeating it three times in the midst of profanity, whereas Wyoming Bottling asserts that Worley quit.

Worley filed suit in January of 1997, claiming breach of employment contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. The trial court granted summary judgment on all claims in favor of Wyoming Bottling. Worley timely appealed.

### STANDARD OF REVIEW

Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, reveals that no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Terry v. Pioneer Press, Inc.*, 947 P.2d 273, 275 (Wyo.1997); *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1250 (Wyo.1997); W.R.C.P. 56(c). A fact is material if it establishes or refutes an essential element of a claim or defense. *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1324 (Wyo.1995). In evaluating summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decisions on issues of law. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216 (Wyo.1994).

### DISCUSSION

#### Contract Claims

Wyoming recognizes the at-will employment doctrine, which allows either an employee or an employer to end the employment relationship at any time for any reason or for no reason. Although employment for an indefinite period of time is presumed to be at will, that presumption can be overcome by either an implied-in-fact contract or an express contract. *Davis*, 934 P.2d at 1249; *Wilder*, 868 P.2d at 217. Worley claims Wyoming Bottling's progressive discipline policy created an implied-in-fact employment contract. Alternatively, Worley claims that he entered into an express oral contract with DeCora.

#### Implied-in-fact Contract

When parties act in a manner conveying mutual agreement and an intent to promise, an implied-in-fact contract may arise. *Wilder*, 868 P.2d at 216. The consideration for such a contract, in the employment context, consists of the benefit to the employer in "an orderly, cooperative and loyal work force." *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1062–63 (Wyo.1986) (citing *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 707 (Wyo.1985)); *Garcia v. UniWyo Federal Credit Union*, 920 P.2d 642, 645 (Wyo.1996). We examine, under an objective test, whether the employer has intended, either by words or conduct, to in-

clude job security as part of an implied contract. *Terry v. Pioneer Press, Inc.*, 947 P.2d at 275; *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 990 (Wyo.1991). "An employment handbook or personnel policies, letters of employment, performance evaluations and an employer's course of dealing may supply terms for an implied-in-fact employment contract which requires termination for cause only unless it contains a sufficient disclaimer." *Bear v. Volunteers of America, Wyoming, Inc.*, 964 P.2d 1245, 1250 (Wyo.1998); *Lincoln v. Wackenhut Corp.*, 867 P.2d 701, 703 (Wyo.1994); *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256, 1259 (Wyo.1993).

 A valid, conspicuous, and unambiguous disclaimer notifying employees of their at-will employment status can preclude a progressive discipline policy from forming an implied contract. *Andrews v. Southwest Wyoming Rehabilitation Center*, 974 P.2d 948, 951 (Wyo.1999); *Sanchez*, 855 P.2d at 1258–59. "We determine as a matter of law whether or not a disclaimer is conspicuous." *Arch of Wyoming, Inc. v. Sisneros*, 971 P.2d 981, 984 (Wyo.1999) (citing *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d at 988). In making that determination, we look at, *inter alia*, the disclaimer's prominence and placement. *McDonald*, 820 P.2d at 989; *Lincoln*, 867 at 703–04.

 A review of Worley's 1980 application reveals that the disclaimer does not occupy a paragraph of its own, but rather follows a sentence authorizing the employer to investigate statements made in the application, along with notice that misrepresentation or omission of facts is cause for dismissal. Wyoming Bottling did not prominently locate the disclaimer with either a heading, subheading, or any type of border, but blended the disclaimer into the rest of the information without bolding, capitalization, or use of other means to separate it from the other text. In *Sanchez*, 855 P.2d at 1259, we held a similar disclaimer was not sufficiently conspicuous. We conclude that the disclaimer language in Worley's 1980 employment application is ineffective as a matter of law.

 Worley presented evidence that Wyoming Bottling's discipline policy, prior to the issuance of the later at-will disclaimers, proceeded with progressive steps before terminating employees. Viewing this evidence in Worley's favor, such a policy may have fettered Wyoming Bottling's right to discharge Worley at any time without cause. Genuine issues of fact persist regarding the discipline policy, including its terms and its extent, whether the policy was followed by Wyoming Bottling, and ultimately whether a contract was formed.

 Wyoming Bottling also relies upon additional disclaimers, including those issued in a 1991 non-compete agreement and a 1993 employee handbook. An employer can use a valid disclaimer, such as in an employee handbook, to reinstate an employee's at-will employment status. *Jewell v. North Big Horn Hosp. Dist.*, 953 P.2d 135, 138 (Wyo. 1998). However, if the disclaimer modifies an existing employment contract requiring termination for cause, the employer must provide consideration to make the disclaimer effective. *Brodie v. General Chemical Corp.*, 934 P.2d 1263, 1267–68 (Wyo.1997). Accordingly, if Worley is able to overcome the presumption that his employment was at-will prior to the 1991 and 1993 disclaimers, then Wyoming Bottling must have provided consideration to alter his employment status back to at-will. *Brodie*, 934 P.2d at 1265, fn. 1.

 Wyoming Bottling neither argues nor directs our attention to any evidence in the record that would establish the requisite consideration. In fact, the only evidence in the record on this subject establishes not consideration, but coercion. Worley testified in his deposition that he was forced to sign the 1991 non-compete agreement under the threat of being fired. In addition, in 1993, Wyoming Bottling threatened to withhold $100 from its employees' pay checks if they did not sign the at-will disclaimer contained in the employee handbook. With material issues of fact to be resolved as to the status of Worley's original employment status, and no consideration apparent for the later disclaimers, summary judgment was improper

on Wyoming Bottling's implied-in-fact contract claim.

### Express Contract

Worley also claims his employment status was governed by an express oral contract. As previously stated, an express contract can overcome the presumption that employment for an indefinite period of time is at will. *Davis*, 934 P.2d at 1249. Parties can declare the terms of an express contract either orally or in writing. *Wilder*, 868 P.2d at 216. However, absent language that explicitly promises job security, an employee merely has a subjective understanding and expectation, which does not provide the basis for an employment contract. *Bear v. Volunteers of America, Wyoming, Inc.*, 964 P.2d at 1250–51. "Whether an oral contract exists, the terms and conditions of the oral contract and the intent of the parties are generally questions of fact." *Wilder*, 868 P.2d at 218; *Shaw v. Smith*, 964 P.2d 428, 435 (Wyo.1998). "Interpretation of the terms of an oral contract becomes a question of law only when they are shown without any conflict in the evidence." *Shaw v. Smith*, 964 P.2d at 435.

Worley asserts that during a conversation with DeCora, he entered into an express oral contract. In his deposition, Worley testified that he grew tired of job uncertainty and confronted DeCora with his intent to quit. DeCora responded: "Your job is secure. You can have that job for as long as you want it." Wyoming Bottling accepted Worley's version of events for summary judgment purposes and, therefore, does not contest that DeCora told Worley he had a job as long as he wanted it. However, Wyoming Bottling contests whether these statements constitute a clear, definite, and mutual agreement.[1] Viewing the record in the light most favorable to Worley, we conclude issues of fact remain whether a mutual agreement existed and whether the parties intended to enter into an express contract. *Wilder*, 868 P.2d at 218–20; *Leithead*, 721 P.2d at 1062–63.

Nevertheless, Worley must establish that he provided Wyoming Bottling with additional consideration to sustain an express oral employment contract altering the at-will presumption. *Wilder*, 868 P.2d at 218 (holding that employer promise of "permanent" employment does not alter the at-will presumption without additional consideration supplied by the employee or explicit language in the contract of employment stating that termination may only be for cause); *Bear v. Volunteers of America, Wyoming, Inc.*, 964 P.2d at 1250. A generally accepted definition of consideration is that a legal detriment has been bargained for and exchanged for a promise. *Loghry v. Unicover Corp.*, 927 P.2d 706, 712 (Wyo.1996) (citing *Moorcroft State Bank v. Morel*, 701 P.2d 1159, 1161–62 (Wyo.1985)). Detriment means giving up something which immediately prior thereto the promisee was privileged to keep. *Id.* In this case, Worley claims, and his deposition testimony supports, that he intended to quit if he did not receive a promise of job security.[2] Although Wyoming Bottling does not dispute the facts, it argues that Worley gave nothing up as consideration to support the contract because, even after his talk with DeCora, Worley was still free to leave at any time. Essentially, their argument is that there was no mutuality of obligation or that Worley's consideration was illusory. However,

---

1. Wyoming Bottling also relies on an opinion from the Tenth Circuit Court of Appeals, interpreting Wyoming law, for the proposition that "[v]erbal assurances of a term of employment cannot defeat [the at-will] presumption unless accompanied by some form of written documentation." *Dobbs v. Chevron U.S.A., Inc.*, 39 F.3d 1064, 1069 (10th Cir.1994). However, no Wyoming case has ever announced such a requirement. In addition, to the extent that this assertion implicates the statute of frauds, Wyo. Stat. Ann. § 1–23–105 (Lexis 1999), we note the alleged contract was of an indefinite duration, rendering the statute of frauds inapplicable. *See Wilder*, 868 P.2d at 218.

2. A similar situation was discussed in *Wilder*, 868 P.2d at 219:

 The Restatement illustrates the operation of this rule with a hypothetical in which an employee is given a pay raise following a job offer from a competitor and a new contract of employment is written. The consideration for the new contract is provided by the employee refusing the job offer from the competitor.
 (citation omitted).

The demand for mutuality of obligation, although appealing in its symmetry, is simply a species of the forbidden inquiry into the adequacy of consideration, an inquiry in which this court has, by and large, refused to engage.

*Pine River State Bank v. Mettille,* 333 N.W.2d 622, 629 (Minn.1983). Worley testified that he agreed to stay on when he was free to leave. There being a question whether this consideration was bargained for, we conclude that Worley provided sufficient evidence on the issue of consideration to survive summary judgment.

■ Assuming Worley and Wyoming Bottling entered into an employment contract (either express or implied) allowing termination only for cause, a question also remains whether Worley was discharged for cause. Wyoming Bottling claims Worley was terminated for violating three personnel policies. Worley counters that termination for these violations was pretextual since the alleged violations were common, ordinary practices, and two fellow employees corroborated his claim. Whether an employee has been terminated for cause is generally a question of fact and, thus, summary judgment is premature under these disputed facts. *See Jewell,* 953 P.2d at 139; *Abell v. Dewey,* 847 P.2d 36, 41 (Wyo.1993).

### Promissory Estoppel

Worley also presented promissory estoppel as an affirmative claim for relief. Although numerous Wyoming cases have discussed promissory estoppel in the employment context, this court has yet to find an appropriate case in which to adopt the theory. *Terry v. Pioneer Press, Inc.,* 947 P.2d at 277; *Loghry,* 927 P.2d at 710–11; *Garcia v. UniWyo Federal Credit Union,* 920 P.2d at 647; *see also Bouwens v. Centrilift,* 974 P.2d 941, 945, 947 (Wyo.1999) (discussing precedential value of *McDonald v. Mobil Coal Producing, Inc.,* 789 P.2d 866 (Wyo.1990) (*McDonald I* ), and *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986 (Wyo.1991) (*McDonald II* )). The case before us presents an appropriate fact pattern, and we adopt promissory estoppel as a theory of recovery in this context. This probably comes as no surprise to the practicing bar, given the number of opinions in which promissory estoppel is discussed, yet not embraced.

■ Promissory estoppel provides relief for an "injury arising from actions or declarations which have been acted on in good faith and which would be inequitable to permit a party to retract." *Davis v. Davis,* 855 P.2d 342, 347–48 (Wyo.1993) (quoting *Jankovsky v. Halladay Motors,* 482 P.2d 129, 132 (Wyo.1971)). In the employment context, promissory estoppel works to prevent injustice to employees who in good faith detrimentally rely upon an employer's actions, in turn binding the employer to fulfill a promise to an employee despite the lack of an employment contract. Promissory estoppel may be useful when, because of lack of consideration, an employee is unable to bring a breach of contract claim. As long as a promise is present, promissory estoppel can be used to satisfy the consideration element. *Terry v. Pioneer Press, Inc.,* 947 P.2d at 277 (citing 1 Henry H. Perritt, Jr., *Employee Dismissal Law And Practice* § 4.39 (3d ed.1992)).

■ Promissory estoppel is detailed in the *Restatement, Second, Contracts* § 90(1) (1981), which we recently quoted:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Bouwens v. Centrilift,* 974 P.2d at 947; *Michie v. Board of Trustees of Carbon County School Dist. No. 1,* 847 P.2d 1006, 1009 (Wyo. 1993). The required elements of a promissory estoppel claim are: the existence of a clear and definite agreement; proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and the equities support the enforcement of the agreement. *Loghry,* 927 P.2d at 710; *Michie,* 847 P.2d at 1009. Whether elements one and two exist are questions for the finder of fact. *Michie,* 847 P.2d at 1009.

Whether element three is satisfied is decided as a matter of law by the court. *Id.*

Relying on his deposition testimony, Worley asserts that DeCora promised job security by telling Worley he could have his job as long as he wanted it in exchange for staying when the company needed his services. We agree with Worley that this evidence is sufficient, at the summary judgment stage, to establish the existence of a promise of job security. *Compare Terry v. Pioneer Press, Inc.,* 947 P.2d at 277 ("The distinction between representing that a person will have 'a job,' as compared to 'a permanent job,' is critical and proves fatal to Terry's claim.")

Along with demonstrating the existence of a promise, Worley must also establish "action or forbearance of a definite and substantial character" to satisfy element two. *Loghry,* 927 P.2d at 710. Here, Worley's reliance is demonstrated by his procurement of a loan following DeCora's assurance of job security. In fact, Worley's deposition testimony establishes that Worley "wasn't [going to buy] anything until [he] had job security." We again conclude an issue of material fact is presented regarding this element.

Regardless, a claim for promissory estoppel may fail if a disclaimer, such as one in an employee handbook, makes the employee's reliance on the promise unreasonable. *Bouwens,* 974 P.2d at 947. "Disclaimer provisions are enforceable against promissory estoppel claims." *Davis v. Wyoming Medical Center, Inc.,* 934 P.2d at 1252; *see Loghry,* 927 P.2d at 711. We have previously stated that an employee's reliance on sources unauthorized to grant job security is unreasonable. *Davis,* 934 P.2d at 1252; *Loghry,* 927 P.2d at 709–11.

Worley's situation, however, is distinguishable from either *Davis* or *Loghry.* Here, for example, one of Wyoming Bottling's disclaimers stated, "[w]ords or actions which are inconsistent with these rights, by any company employee or representative *except the president,* are not authorized and may not be relied upon." (Emphasis added.) Worley claims that DeCora, the company president authorized to provide such assurances, made the job security representation.

If DeCora did make such a promise, then Worley's belief may be considered reasonable, and he arguably acted in justifiable reliance on DeCora's promise. The disclaimer, therefore, does not defeat Worley's promissory estoppel claim, and we conclude that summary judgment was improper.

### Covenant of Good Faith and Fair Dealing

Wyoming recognizes a limited tort claim for breach of the covenant of good faith and fair dealing in employment contracts. *Loghry,* 927 P.2d at 712; *Wilder,* 868 P.2d at 221; *Townsend v. Living Centers Rocky Mountain, Inc.,* 947 P.2d 1297, 1299 (Wyo. 1997). Because this cause of action sounds in tort, we employ traditional tort principles in our analysis. Fundamentally, this tort requires there be a duty and a breach thereof.

Our first inquiry is whether a duty exists. "[A]lthough a duty of good faith and fair dealing is created by law in all cases, it is only in rare and exceptional cases that the duty is of such a nature as to give rise to tort liability." *Wilder,* 868 P.2d at 221 (quoting *K Mart Corp. v. Ponsock,* 103 Nev. 39, 732 P.2d 1364, 1370 (1987)). A duty arises only where a special relationship of trust and reliance exists between the employer and the employee seeking recovery. *Loghry,* 927 P.2d at 712; *Wilder,* 868 P.2d at 222. Whether a special relationship exists is a question of fact, not a question of law, and is to be decided by the trier of fact unless reasonable minds could not differ. *Jewell v. North Big Horn Hosp. Dist.,* 953 P.2d at 139. Previous cases indicate some of the sources that may give rise to a special relationship include separate consideration, common law, statutory rights, or the existence of rights accruing with longevity of service. *Loghry,* 927 P.2d at 712; *Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1178 (Wyo.1997); *Wilder,* 868 P.2d at 221; *VanLente v. University of Wyoming Research Corp.,* 975 P.2d 594, 598 (Wyo.1999).

To support his claim of a special relationship, Worley relies on separate consideration. We begin our analysis by tracing the history of separate consideration in this context. The idea of a special relationship of trust and reliance based on separate consideration first

appeared in *Wilder*, 868 P.2d at 221. There, citing to *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722, 729 (1980), this court wrote that "[t]rust and reliance may be found by the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service." *Wilder*, 868 P.2d at 221. A closer look at *Cleary* reveals that decision did not rely on separate consideration. Instead, the California court held "that the longevity of the employee's service [18 years], together with the expressed policy [regarding grievances and discharge] of the employer, operates as a form of estoppel, precluding any discharge of such an employee by the employer without good cause." 168 Cal.Rptr. at 729.

The preceding *Wilder* quote was taken from the following discussion in *Cleary:*

> As was concluded by a commentator in 26 Stanford Law Review at page 369 (see fn. 3), "(t)he existence of separate consideration, the common law of the job, and rights accruing through longevity are all factors for courts to consider in evaluating whether an implied contractual right to job security exists."

168 Cal.Rptr. at 729. This passage from *Cleary* contemplates separate consideration in support of an implied contract and does not reference the implied covenant of good faith and fair dealing.

Shifting our focus to the quoted law review article, we quote that article:

> The rule that permanent employment arrangements are indefinite and hence unenforceable created serious inequities when the clear intent of the parties was to bind the employer. To correct this situation the courts recognized an exception to the rule when an employee gave extra consideration for the job.

J. Peter Shapiro & James F. Tune, *Implied Contract Rights to Job Security*, 26 Stan. L.Rev. 335, 351 (1974).[3] This article relied

on, *inter alia*, a Minnesota case, *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 266 N.W. 872 (1936), for this proposition. The Minnesota Supreme Court looks at the following for separate consideration:

> [A] contract for "permanent employment" will be construed to be terminable at the will of either party except in compelling circumstances, such as where the employee in effect purchases the permanent employment by giving a valuable consideration other than his customary daily services or otherwise giving up more than one normally gives up when he agrees to take on new employment.

*Bussard v. College of Saint Thomas, Inc.*, 294 Minn. 215, 200 N.W.2d 155, 161 (1972); see also *Pine River State Bank v. Mettille*, 333 N.W.2d at 628–29.

■ This rule is essentially the same rule as found in the *Wilder* discussion concerning additional consideration to form an express contract. 868 P.2d at 218–19. Given the genesis of separate consideration from *Cleary*, we conclude the analysis for separate consideration to support a special relationship should be the same as that used to determine whether there exists additional consideration necessary to support an express contract.

In *Loghry*, our only case discussing separate consideration in the context of the covenant of good faith and fair dealing, our analysis was consistent with *Cleary* and the sources it relied on. The employee in *Loghry* contended that the special relationship existed by virtue of separate consideration given when she turned over files to a vice president (Hilt) of her employer's sister corporation and did not inform her supervisor that the supervisor was the object of an investigation. In rejecting Loghry's claim, we wrote: "Loghry's assertion that she acted when she did not have to does not constitute valid consideration since there is no dispute

---

**3.** The authors of this article divided separate consideration into two categories: (1) benefits to the employer and (2) special reliance by the employee. As examples of benefits to the employer, the authors provide: (1) surrender of tort claims; (2) contributions to the business; (3) job training. As special reliance, the authors give the following examples: (1) sale of business, i.e. people who sell the business and become employees of the purchasers; (2) changing jobs; (3) moving; and (4) reliance induced by recruitment techniques. 26 Stan.L.Rev. 350–56. We offer no opinion on the efficacy of any of these putative forms of consideration.

that she was required to turn over company documents at the request of a company officer. She does not contend that she gave up an obligation to inform her supervisor of Hilt's request. Without a demonstration of legal detriment, Loghry does not establish the existence of separate consideration." 927 P.2d at 712. To establish separate consideration, the *Loghry* court thus required something more than merely performing the duties of the job.

■ To establish his claim of separate consideration, Worley relies on the same consideration he claims he provided to form an express employment contract. Worley asserts he intended to quit unless he could obtain job security. We have previously concluded this additional consideration is sufficient to preclude summary judgment on Worley's cause of action based on express contract. We conclude it likewise creates a question whether Worley provided separate consideration.

Besides separate consideration, the evidence establishes other facts that could lead to a finding of a special relationship. Wyoming Bottling does not dispute that fifteen and a half years constitutes long term employment. Both DeCora and Gibson knew Worley was relying on DeCora's promise of job security and supervisor Gibson's later reassurances that "everything was fine" to make major purchases. Moreover, the evidence supports Worley's contention that he did rely on these assurances when deciding to refinance his home and make major purchases. There was also evidence that Worley was not just an average employee. In fact, an argument can be made that he was vital to Wyoming Bottling, especially at the time of his conversation with DeCora regarding job security. In his affidavit, Worley's former supervisor, McDonald, states that Worley was the only employee left in the Casper office with the ability and experience to run the office until McDonald's successor could be found. According to McDonald, it would have been difficult for Wyoming Bottling, without Worley, to continue normal operations for some time. This finds support in Worley's testimony that he filled McDonald's position of area manager on numer-

ous occasions when the position was vacant. Viewing all this evidence in the light most favorable to Worley, we conclude reasonable minds may differ whether Worley established a special relationship of trust and reliance between himself and Wyoming Bottling. *Jewell*, 953 P.2d at 139; *compare Sears v. Amoco Production Co.*, 967 F.Supp. 1222, 1230–31 (D.Wyo.1997).

■ Having concluded that a special relationship of trust and reliance could be found to exist based on these facts, the next question is whether Wyoming Bottling breached the duty of good faith and fair dealing. A breach of the covenant will generally be found only in cases involving egregious conduct that ordinary contract principles cannot remedy. In the seminal case of *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1370 (1987), the Nevada Supreme Court wrote: "Tort remedies are allowed here only because K Mart's conduct goes well beyond the bounds of ordinary liability for breach of contract." In essence, the determination of whether the implied covenant has been breached is a question of whether the employer acted in bad faith.

■ Our previous cases have addressed the covenant primarily in the context of longevity of service, where we have made it clear that lengthy employment coupled with termination is insufficient to establish a breach of the implied covenant. *Garcia*, 920 P.2d at 646; *Jewell v. North Big Horn Hosp. Dist.*, 953 P.2d at 139; *VanLente v. University of Wyoming Research Corp.*, 975 P.2d at 598; *Terry v. Pioneer Press, Inc.*, 947 P.2d at 278. Usually, "the special relationship giving employees an action on the implied covenant of good faith and fair dealing stems from a long term employment relationship coupled with a discharge calculated to avoid employer responsibilities to the employee, e.g., benefits or commissions." *Garcia*, 920 P.2d at 646 (citing *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1257 (1977) and *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1366–69 (1987)); *VanLente*, 975 P.2d at 598; *Terry v. Pioneer Press, Inc.*, 947 P.2d at 278.

In *Wilder*, we provided examples of the type of conduct that could constitute a breach of the implied covenant. 868 P.2d at 220–22. While, due to the infinite variety of human interaction, recovery is by no means limited to these examples, two general scenarios have emerged. *Wilder* first cited *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1255–58 (1977), where a twenty-five year employee was fired to avoid paying bonuses due him on a large sale he had just completed. 868 P.2d at 220–21. The second example found in *Wilder* was the Nevada case of *K Mart Corp. v. Ponsock*, 732 P.2d at 1366, where a nine and a half year contract employee was fired, for trivial reasons, six months prior to the time his pension was scheduled to fully vest.[4] As *Wilder* teaches, in order to establish that the implied covenant has been breached, most commonly the employee must have been terminated to avoid payment of commissions or benefits already earned, or to avoid payment of benefits scheduled to arise or vest in the near future. *See also Masso v. United Parcel Service of America, Inc.*, 884 F.Supp. 610, 614 (D.Mass.1995); *Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1125 (1st Cir. 1995); *Kelley v. City of Mesa*, 873 F.Supp. 320, 329 (D.Ariz.1994). *But see Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (holding that ERISA preempts state law wrongful discharge claim based on termination to avoid pension fund payments).

Worley argues his firing was calculated to avoid payment of employment benefits, including contributions to his retirement account and salary commensurate with his length of service. Worley does not contend

that he is being denied benefits or salary he has already earned. *Fortune v. National Cash Register Co.*, 364 N.E.2d at 1257. Nor does he contend that he was fired shortly before some type of benefit was scheduled to accrue or vest. *K Mart Corp. v. Ponsock*, 732 P.2d at 1366. Instead, Worley relies on *Jewell*, the only case decided by this court in which a claim based on breach of the implied covenant has survived summary judgment. *Jewell*, 953 P.2d at 139. In *Jewell*, the employee of thirty years was commanding a large salary thanks to her longevity as well as overtime pay. "Because of budgetary problems, Jewell's overtime and her requests for a scheduled pay raise had caused a conflict between her and Chief Executive Officer Kellersberger.... Her overtime had also been the subject of discussion among Kellersberger's management team which viewed it as excessive and unwarranted." 953 P.2d at 136–37. Thus, the *Jewell* court concluded that "the record establishes that a jury could reasonably decide that Jewell was improperly discharged for the purpose of denying her a scheduled pay raise and other possible benefits associated with her longevity." 953 P.2d at 139. In this case, there is no material issue of fact regarding whether the covenant has been breached because there is simply no evidence that Worley was discharged in order to deny benefits. Summary judgment on this cause of action is affirmed.

### *Intentional Infliction of Emotional Distress*

We recognize the tort of intentional infliction of emotional distress as stated in *Restatement, Second, Torts* § 46(1) (1965):

4. Since its decision in *Ponsock*, the Nevada Supreme Court has greatly limited this tort remedy. In *Martin v. Sears, Roebuck and Co.*, 111 Nev. 923, 899 P.2d 551, 555 (1995), that court provided the following interpretation of *Ponsock*:

[In *Ponsock*,] this court held that a claim for bad faith discharge would lie in the fact-specific instance where a tenured employee who enjoyed a right to continued employment was discharged by a large, nationwide employer in bad faith for the improper motive of defeating contractual retirement benefits.... For this cause of action to apply, specific elements must exist. First, there must be an enforceable contract. Second, there must be a special

relationship between the tortfeasor and the tort victim, such as the relationship that exists between an insured and insurer, that is, a relationship of trust and special reliance. Third, the employer's conduct must go "well beyond the bounds of ordinary liability for breach of contract." However, the mere breach of an employment contract by a large and powerful employer, or any employer, does not in and of itself give rise to tort damages. The reason tort damages are appropriate for bad faith discharge is that ordinary contract damages do not adequately compensate, nor do they make the victim whole.

(Citations omitted.)

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Wilder,* 868 P.2d at 223–24; *Leithead,* 721 P.2d at 1065. We have acknowledged that certain conduct in employment situations may be outrageous enough to provide the employee with a basis of recovery. *Kanzler v. Renner,* 937 P.2d 1337, 1341 (Wyo.1997); *Leithead,* 721 P.2d at 1066; *Wilder,* 868 P.2d at 223–24. However, despite an employee's success in showing severe emotional distress as a result of termination, recovery may still be unattainable in some cases. "If an employee's mental distress is caused solely by his discharge, and if the discharge was permitted in his contract, then the employer has a complete defense, even if the employer is aware that the discharge will cause emotional distress." *Terry v. Pioneer Press, Inc.,* 947 P.2d 273, 278 (Wyo.1997); *see also Leithead,* 721 P.2d at 1066; *Restatement, Second, Torts,* § 46, cmt. g. At the crux of this case is whether Wyoming Bottling was permitted to terminate Worley.

■ To recover under the tort of intentional infliction of emotional distress, the plaintiff must prove that the defendant acted in an extreme and outrageous manner and that the defendant intentionally or recklessly caused the plaintiff severe emotional harm. *Kanzler v. Renner,* 937 P.2d at 1341 (Wyo. 1997) (citing *R.D. v. W.H.,* 875 P.2d 26, 31 (Wyo.1994)). Comment d of the *Restatement, Second, Torts* § 46, which we have cited on numerous occasions, attempts to clarify the parameters of outrageous behavior. *See Hatch v. State Farm Fire and Cas. Co.,* 930 P.2d 382, 396 (Wyo.1997); *Spurlock v. Ely,* 707 P.2d 188, 192 (Wyo.1985); *Garcia v. Lawson,* 928 P.2d 1164, 1168 (Wyo.1996) (Thomas, J., concurring specially); *Kanzler v. Renner,* 937 P.2d at 1341. We quote from that comment:

> *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

■ Both the court and the jury play a role in assessing the validity of a claim of outrageousness.

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Kanzler v. Renner,* 937 P.2d at 1341 (quoting *Restatement, Second, Torts* § 46, cmt. h); *Leithead,* 721 P.2d at 1066.

■ In *Wilder,* 868 P.2d at 223, we considered the allegations of outrageous conduct

from two points in time: conduct prior to and at the time of termination; and conduct following termination. In Worley's case, however, we limit our focus to the conduct of Wyoming Bottling prior to and at the time of Worley's termination.

First, there is evidence from the months preceding Worley's termination that helps establish the claim of outrageous behavior. Worley advances that during this time, despite his stellar work record, Wyoming Bottling harassed him by repeatedly threatening to terminate his employment, by demanding impossibly large increases in sales, and by withholding a periodic pay raise. In addition, Worley and his coworkers were humiliated and vilified for minor infractions. Overall, McDonald, Worley's former coworker, described the situation as a "living hell."

Three days prior to his claimed termination, Worley received a letter stating he would be demoted to route manager accompanied by an $11,000 cut in pay, the loss of use of a company car, and the loss of other perquisites. Worley testified that he attempted to discuss his demotion with Gibson, his supervisor, but Gibson told him he should just go ahead and quit because he would probably be fired in two or three weeks anyway. In addition, Worley asserted that Gibson told him:

> I will make it so tough on you, you would have wished you would have quit.... You think your job was tough before; its going to be really tough now.

Worley then asked Gibson if he could call DeCora. Worley testified that Gibson responded:

> If you call Mr. DeCora, he will—then he stopped. And then he says, You can call Mr. DeCora if you want to.

Worley stated that when he telephoned DeCora to talk about his demotion, DeCora told him:

> You either accept it [the demotion] or you're fired. And he said it again, You're fired. You're just fired. I'm tired of your goddamn shit anyway, stupid silly ass shit. You're fired.

DeCora also told Worley: "Get your shit and get the hell out of there." When Worley finished his call with DeCora, he told Gibson that DeCora had just fired him. It was only then that Gibson told him: "That was the ending of the statement that I was going to make; that if you called him, he would fire you."

None of these facts, standing alone, convinces us that Wyoming Bottling's conduct was outrageous. Indeed, "[t]he workplace is not always a tranquil world where civility reigns. Personality conflicts and angst over disciplinary actions can be expected." *Kentucky Fried Chicken Nat'l Management Co. v. Weathersby*, 326 Md. 663, 607 A.2d 8, 16 (1992). Regardless, we must also examine the context and background in which these events took place. *Swenson v. Northern Crop Ins., Inc.*, 498 N.W.2d 174, 186 (N.D.1993); *Pavilon v. Kaferly*, 204 Ill. App.3d 235, 149 Ill.Dec. 549, 561 N.E.2d 1245, 1252 (1990).

In examining context, a number of courts have recognized the employer-employee relationship as a significant factor in determining outrageousness. *Kentucky Fried Chicken Nat'l Management Co. v. Weathersby*, 607 A.2d at 15 (collecting cases). "It is only natural that a defendant's position of power over a plaintiff may enhance his or her ability to do harm." *Id.* Comment e to § 46 of the *Restatement Second* also recognizes this reality:

> The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.

Nevertheless, liability does not attach upon the mere existence of an employment relationship. On this issue, we are in accord with the Maryland Court of Appeals:

> We agree that the employment relationship is a factor to be considered when analyzing whether an employer's behavior was so outrageous that he or she has committed the tort of intentional infliction of emotional distress. That does not mean, however, that this Court wishes to lower the threshold for determining liability whenever the parties are employer and

employee. The conduct must still reach the same degree of outrageousness if an employee is to prove that his or her employer has committed this tort; the employment relationship is merely one factor among many to use in analyzing individual cases.

*Kentucky Fried Chicken Nat'l Management Co. v. Weathersby*, 607 A.2d at 15.

In this case, Wyoming Bottling's position of power over Worley, especially given DeCora's and Gibson's assurances of job security, could be viewed as an important factor. Likewise, the fact that Wyoming Bottling knew Worley was relying on these assurances in making financial commitments furnishes added impetus for Worley's claim. Thus, the previously stated facts (those describing Worley's termination and the months prior thereto), although not outrageous in and of themselves, are more compelling when considered in the context of the unique employment relationship between Worley and Wyoming Bottling.

We acknowledge that this is a close case. However, we are persuaded that, given all the facts and circumstances, the cumulative effect of Worley's evidence is sufficient such that reasonable minds may differ as to whether the conduct is outrageous, precluding summary judgment. *See Pavilon v. Kaferly*, 149 Ill.Dec. 549, 561 N.E.2d at 1251–52 (cumulative pattern of conduct used to establish outrageousness). Nevertheless, we must still address whether Worley has sufficiently established the second prong of his claim, emotional distress, in order to preclude summary judgment.

Comment j to *Restatement, Second, Torts* § 46(1) defines emotional distress as

all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises.

In *Leithead*, this court noted the employee's emotional distress must go above and beyond the normal distress that arises from loss of a job: "The ordinary person who is fired from his job might worry about his future and his ability to pay his bills. He might also lose

sleep over it. But this is the kind of distress with which the ordinary person must be expected to cope." *Id.* at 1067; *Wilder*, 868 P.2d at 223.

■ Our review of an emotional distress claim is similar to the determination of whether conduct is extreme or outrageous:

It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

*Kanzler v. Renner*, 937 P.2d at 1341 (quoting cmt. j, *Restatement, Second, Torts* § 46); *Davis v. Consolidated Oil & Gas, Inc.*, 802 P.2d 840, 849 (Wyo.1990); *Leithead*, 721 P.2d at 1067.

■ We conclude sufficient evidence of emotional distress was presented to preclude summary judgment. For approximately one year after his discharge, Worley was treated for clinical depression. In an affidavit, Worley's doctor stated that Worley's depression was severe, as demonstrated by bouts of crying, abnormal emotional upset, and remaining in a vegetative state. The physician further stated that Worley's depression was brought about in large part due to the manner in which he was terminated. In addition, Worley suffers from diverticulitis, which his physician asserted was aggravated by the stress arising from his termination, especially the manner in which he was terminated. There was sufficient evidence presented to preclude summary judgment on Worley's intentional infliction of emotion distress claim.

## CONCLUSION

Genuine issues of material fact exist on Worley's claims for breach of contract, promissory estoppel, and intentional infliction of emotional distress. The district court's Order Granting Defendants' Motion for Summary Judgment is reversed and remanded on these claims. Summary judgment on Worley's claim premised on the implied covenant of good faith and fair dealing is affirmed.