2002 WY 171

**Kathleen TRABING, Appellant (Plaintiff),**

v.

**KINKO'S, INC., Appellee (Defendant).**

**No. 02–3.**

Supreme Court of Wyoming.

Nov. 22, 2002.

John B. "Jack" Speight and Amanda Hunkins of Speight, McCue & Associates, P.C., Cheyenne, WY, Representing Appellant. Argument by Ms. Hunkins.

Gary R. Scott of Hirst & Applegate, P.C., Cheyenne, WY, Representing Appellee. Argument by Mr. Scott.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Appellant Kathleen Trabing appeals the district court's order of summary judgment, which disposed of her claims for breach of implied-in-fact contract, promissory estoppel, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.

[¶ 2] We affirm.

* Chief Justice at time of oral argument.

## ISSUES

[¶ 3] Trabing offers the following issues for our analysis:

A. Do genuine issues of material fact exist which preclude summary judgment in favor of Kinko's on the issue of whether an implied-in-fact contract existed by virtue of the Kinko's Co-worker Handbook?

1. Does the Employment Agreement executed on the day Trabing began work for Kinko's fail for lack of consideration as it pertains to provisions negating its Co-worker Handbook's promises of job security?

2. Is it bad public policy to allow employers to escape contractual liability for handbook provisions by simply distributing employee handbooks prior to date employee commences working?

B. Do genuine issues of material fact exist regarding Trabing's alleged "actual knowledge" of the at-will provisions of the Handbook as it pertains to her be[ing] "sufficiently informed" that her employment was at-will?

C. Do genuine issues of material fact exist regarding Kinko's course of conduct with respect to its emphasis on "Positive Discipline" as a mandatory process such that it negated its Co-worker Handbook disclaimer and moreover the presumption of at-will employment?

D. Do genuine issues of material fact exist regarding whether Kinko's "Positive Discipline" process and course of dealing constituted specific promises to Trabing upon which she detrimentally relied?

E. Do genuine issues of material fact exist as to whether a special relationship existed between Trabing and Kinko's and also as to whether Kinko's then breached the implied covenant of good faith and fair dealing by terminating Trabing's employment based on a few disgruntled employees' comments?

F. Do genuine issues of material fact exist as to whether Trabing suffered severe emotional distress when Kinko's terminated her solely on the basis of her employees' anonymous and unsubstantiated comments during a time in which she was grieving over the recent loss of her mother?

Appellee Kinko's states its issue as follows:

Was summary judgment properly granted by the District Court upon Appellant Trabing's claims for breach of implied in fact contract; promissory estoppel; breach of the covenant of good faith and fair dealing; and the intentional infliction of emotional distress?

## FACTS

[¶ 4] Trabing began working for Kinko's as a branch manager of the Laramie, Wyoming store on December 21, 1992. She signed an Employment Agreement on that date, which provided in part:

Kinko's and the co-worker understand that the co-worker is employed at will, which means that the co-worker or Kinko's may terminate the employment at any time, with or without cause and with or without advance notice.

A few days earlier, either on December 18 or 19, 1992, it is unclear what the handwritten numeral is, Trabing signed a Co–Worker Agreement, in which she acknowledged that she had received the Co Worker Handbook. The handbook outlined Kinko's policies and procedures, which included the company's positive discipline system. The handbook also contained an employment-at-will provision.

[¶ 5] During the nearly eight years that Trabing was employed by Kinko's, she received several "above-standard" performance evaluations. In 1998, however, the store's sales revenues began to decline, and Trabing experienced difficulties maintaining good working relationships with her subordinates. Her Management Effectiveness Survey (MES) scores, which are anonymous evaluations the manager's staff completes regarding the manager's capabilities and management style, got consistently worse. The surveys also contained numerous critical comments regarding the way Trabing performed her job and treated her employees. Trabing admits that she was having difficulties during this time, but attributes her problems in part to the fact that her mother

was fighting and ultimately lost a long battle with cancer.

[¶ 6] Concerned about Trabing's recent low MES score, Trabing's regional manager and a Kinko's human resources specialist traveled to the Laramie store. They placed Trabing on decision-making leave, during which time Trabing was instructed to devise a plan for improving her performance. During those three days, Trabing made various attempts to contact her regional manager for assistance in drafting her plan. When she finally got in touch with him, he advised Trabing that he could not discuss the situation with her. At the conclusion of the three-day period, the three met again. Trabing had not drafted a plan for improvement, and she was terminated at that time.

[¶ 7] Trabing filed suit, asserting claims for breach of implied-in-fact contract, promissory estoppel, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. Kinko's moved for summary judgment. The district court granted Kinko's motion, and this appeal followed.

### STANDARD OF REVIEW

[¶ 8] Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶ 10, 25 P.3d 511, ¶ 10 (Wyo.2001); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense that has been asserted by the parties. *Williams Gas Processing–Wamsutter Co. v. Union Pacific Resources Co.*, 2001 WY 57, ¶ 11, 25 P.3d 1064, ¶ 11 (Wyo.2001). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 15, 18 P.3d 645, ¶ 15 (Wyo.2001). We do not accord any deference

to the district court's decisions on issues of law. *Id.*

### DISCUSSION

#### A. Implied–In–Fact Contract

[¶ 9] Trabing first contends that summary judgment was inappropriately granted to Kinko's because genuine issues of material fact exist regarding whether an implied-in-fact contract had been formed by virtue of Kinko's Co–Worker Handbook. She maintains that the Co–Worker Handbook created an implied-in-fact contract whereby termination could occur only for cause and only by following the positive discipline process. Kinko's insists that an implied-in-fact contract did not exist because Trabing signed an express, written employment agreement when she began her employment on December 21, 1992.

[¶ 10] In Wyoming, employment is presumed to be at will. *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo.2000); *Bear v. Volunteers of America, Wyoming, Inc.*, 964 P.2d 1245, 1250 (Wyo. 1998). This presumption may, however, be modified by either an express or implied-in-fact contract. *Id.*

> The contract of employment is created by either an express contract or a contract implied in fact. Express contracts are ones in which the terms are declared by the parties either in writing or orally at the time the contract is formed....
>
> The implied in fact contract of employment arises from a mutual agreement and intent to promise which is found in the acts or conduct of the party sought to be bound. Contracts of employment which are found from employee handbooks or policies are implied in fact contracts. Both express and implied in fact contracts of employment are enforceable to the same degree.

*Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216–17 (Wyo.1994) (citations omitted).

[¶ 11] On December 18 or 19, 1992, two or three days before she began work, Trabing received a copy of the employee handbook. The provisions of the handbook im-

plied cause was required for termination. Although the handbook contains provisions stating it is not intended to create a contract and employment is at will, Kinko's concedes these disclaimers are not sufficiently conspicuous. Absent any other writings or representations prior to beginning employment, a question of fact would exist as to whether the handbook creates an implied contract altering the presumption of at-will employment and requiring cause for termination. However, on December 21, 1992, the day she began work, Trabing was given a copy of the employment agreement which provided as follows:

> Kinko's and the co-worker understand that the co-worker is employed at-will, which means that the co-worker or Kinko's may terminate the employment at any time, with or without cause and with or without advance notice....
>
> . . .
>
> I understand that this agreement constitutes the full and extent of the agreement between myself and Kinko's regarding the terms of my employment. I understand that Kinko's will not be bound by any oral statements or promises that are inconsistent with this agreement and this agreement can only be modified or amended in writing by an authorized representative of the Company.

[¶ 12] Trabing signed the agreement, acknowledging that:

> I have read and understand this Employment Agreement and agree to the terms and conditions contained herein. I understand that this agreement supercedes all previous agreements and that the company may change, rescind or cancel this agreement at any time, in its sole and absolute discretion. I further acknowledge that this Agreement has not been executed in reliance upon any representation or promise except those contained herein and that Kinko's has made no guarantee regarding my employment for a specified period of time.

[¶ 13] Parties to a contract are presumed to have knowledge of the terms of the contract and its effects. *First State Bank v. American Nat'l Bank*, 808 P.2d 804, 806 (Wyo.1991). When parties sign an express contract, the terms within that signed writing control. Generally, an implied contract may not be found if there exists an express contract between the same parties on the same subject matter. 42 C.J.S., *Implied Contracts*, § 34 (1991). When these principles are applied, the express agreement supercedes any implied contract which otherwise may have existed by virtue of the employee handbook.

[¶ 14] Trabing claims that the Co–Worker Handbook that she was given on December 18 or 19, 1992, and asked to review and sign supercedes the Employment Agreement that she signed on the day she began working for the company on December 21, 1992, and that the Employment Agreement fails for lack of consideration. She cites *Brodie v. General Chemical Corp.*, 934 P.2d 1263 (Wyo. 1997) in support of her claim. Trabing's reliance on *Brodie* is misplaced.

[¶ 15] In *Brodie*, the employee began work governed by a handbook containing promises implying job security. Some time later in the course of his employment, the employer attempted to revoke the handbook to restore at-will status. The question presented was whether additional consideration was required when an employer modifies an implied job security provision to restore at-will status. Under the facts presented, the court answered the question in the affirmative. However, in determining whether there was sufficient consideration to support the revocation as it occurred in that case, the court expressly distinguished representations made after employment begins from those made at the time employment begins. The court said:

> Our analysis today assumes that the representations are made after employment has begun and is, therefore, a modification. *A different situation is presented when the representation is made at the time that employment begins. In that case, the representation,* if enforceable, *is a term of the implied employment contract along with the other usual terms* specifying pay, benefits, working hours, and job responsibilities *under the rule that a single consideration can support several promises.*

*Brodie*, at 1265 n. 1 (citation omitted; emphasis added).

[¶ 16] In the present case, unlike *Brodie*, the representation made in the express agreement that Trabing's employment was at will was not made after employment had begun but rather at the time employment began. Under *Brodie*, therefore, it is not a modification requiring separate consideration; rather, it is a term of the employment relationship along with all the other terms and is supported by the same consideration. Contrary to Trabing's argument, therefore, the employment agreement does not fail for lack of sufficient consideration.

[¶ 17] In Wyoming, employment is presumed to be at will. *Worley*, 1 P.3d at 620; *Bear*, 964 P.2d at 1250. The handbook provided to Trabing two to three days before she began her employment stated it was not intended to be a contract, the employer reserved the right to change or revise the policies at any time, employment was at will, and employment could be terminated at any time with or without cause and with or without advance notice. That these provisions alone may not be sufficiently conspicuous under Wyoming law to preserve Trabing's at-will status does not end the discussion in this case. The day Trabing began her employment, she signed a co-worker agreement which further provided that the employer could unilaterally change the policies at any time and terminate the employment relationship at any time with or without cause or notice. That same day, Trabing received and signed a copy of the employment agreement, acknowledging she had read and understood it, which reiterated that her employment was at will.

[¶ 18] These employment documents were given to Trabing in the same time frame, separated only by a couple of days, before she began work, making them in essence part of one transaction. Moreover, the express agreement accomplished what a conspicuous disclaimer appearing in the handbook itself would have accomplished—it informed Trabing she was employed at will, Kinko's could terminate her employment at any time with or without notice or cause, it constituted the full agreement between herself and Kinko's, Kinko's was not bound by any inconsistent agreement or representa-

tions, and it superceded any previous agreements. Any ambiguity created by the absence of a conspicuous disclaimer in the handbook was resolved upon issuance of the employment agreement to Trabing when she began work on December 21, 1992.

[¶ 19] Trabing claims that by emphasizing the positive discipline procedures, Kinko's course of conduct negated the at-will employment. We disagree. The express Employment Agreement provided that Kinko's would not be bound by any oral statements or promises that were inconsistent with the agreement and further that the agreement could only be modified in writing by an authorized representative of Kinko's. Given this term, any course of conduct that occurred subsequent to the execution of the Employment Agreement could not have been reasonably relied upon or interpreted as a modification of the contract by Trabing.

[¶ 20] We find that Trabing and Kinko's entered into an express, written employment contract on December 21, 1992. When the language in a written contract is unambiguous, the intention of the parties shall be ascertained from the plain language of the contract. *Busch Dev., Inc. v. City of Cheyenne*, 645 P.2d 65, 71 (Wyo.1982). The interpretation of an unambiguous contract is a question of law for the court and may properly be disposed of by summary judgment. *Sowerwine v. Keith*, 997 P.2d 1018, 1020 (Wyo.2000). The unambiguous terms of the Employment Agreement provided that Trabing's employment was at will. We hold that the district court's decision to enforce that provision by way of summary judgment was appropriate.

**B. Promissory Estoppel**

[¶ 21] Trabing contends that the positive discipline procedure outlined in the Co Worker Handbook constituted a promise that Trabing would be terminated only for cause and only after the positive discipline procedures had been complied with. Kinko's counters that a promissory estoppel claim requires that the party invoking the doctrine have acted reasonably in justifiable reliance on the promise that was allegedly made.

[¶ 22] In *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d at 623, this court

explained the remedy of promissory estoppel and outlined the required elements of a promissory estoppel claim:

> Promissory estoppel provides relief for an "injury arising from actions or declarations which have been acted on in good faith and which would be inequitable to permit a party to retract." *Davis v. Davis*, 855 P.2d 342, 347–48 (Wyo.1993) (quoting *Jankovsky v. Halladay Motors*, 482 P.2d 129, 132 (Wyo.1971)). In the employment context, promissory estoppel works to prevent injustice to employees who in good faith detrimentally rely upon an employer's actions, in turn binding the employer to fulfill a promise to an employee despite the lack of an employment contract. Promissory estoppel may be useful when, because of lack of consideration, an employee is unable to bring a breach of contract claim. As long as a promise is present, promissory estoppel can be used to satisfy the consideration element. *Terry v. Pioneer Press, Inc.*, 947 P.2d at 277 (citing 1 Henry H. Perritt, Jr., Employee Dismissal Law And Practice § 4.39 (3d ed.1992)).

> Promissory estoppel is detailed in the Restatement, Second, Contracts § 90(1) (1981), which we recently quoted:

>> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

> *Bouwens v. Centrilift*, 974 P.2d at 947; *Michie v. Board of Trustees of Carbon County School Dist. No. 1*, 847 P.2d 1006, 1009 (Wyo.1993). The required elements of a promissory estoppel claim are: the existence of a clear and definite agreement; proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and the equities support the enforcement of the agreement. *Loghry*, 927 P.2d at 710; *Michie*, 847 P.2d at 1009.

This court has held that a conspicuous disclaimer that indicates at-will employment defeats a promissory estoppel claim because such a disclaimer makes it unreasonable for an employee to rely on any subsequent understanding that her employment would be anything other than at will. *Loghry v. Unicover Corp.*, 927 P.2d 706, 711 (Wyo.1996).

[¶ 23] Although Trabing asserts that the disclaimer in the Co Worker Handbook was not conspicuous, we do not address this claim because the evidence in this case demonstrates that Trabing routinely read the at-will provision to new employees, and she, therefore, had actual knowledge of the at-will policy whether it was conspicuous or not. Furthermore, Trabing is deemed by contract law to have knowledge of the terms included in the Employment Agreement that she signed. Her contract contained both the at-will provision and the provision that explained that Kinko's would not be obligated by any oral statements or promises that were inconsistent with the Employment Agreement. We hold, therefore, that Trabing could not have reasonably relied upon any statements or practices that indicated that she was anything other than an at-will employee and that Kinko's was entitled to a summary judgment on this issue.

## C. *Implied Covenant of Good Faith and Fair Dealing*

■ [¶ 24] Trabing next asserts that her eight years of dedicated service to Kinko's along with the separate consideration of her dedication to outstanding customer service that went above and beyond the call of duty created a special relationship of trust and reliance between herself and Kinko's and that Kinko's breached its duty to act in good faith and fair dealing when it terminated her employment. Kinko's replies that Trabing has failed to establish the requisite special relationship of trust and reliance for her breach of implied covenant of good faith and fair dealing claim.

■ [¶ 25] Kinko's is correct in its assertion that a special relationship of trust and reliance must be demonstrated before an employee can recover on an implied covenant of good faith and fair dealing claim. *Van-Lente v. University of Wyoming Research Corp.*, 975 P.2d 594, 598 (Wyo.1999). Previous Wyoming cases have indicated the type of factors that will give rise to a special relationship: separate consideration, common

law, statutory rights, or the existence of rights accruing with longevity of service. *Worley*, 1 P.3d at 624.

[¶ 26] With regard to longevity of service, this court has stated that the mere longevity of service is not sufficient to create the special relationship leading to tort remedy. *VanLente*, 975 P.2d at 598. "Usually, the special relationship ... stems from a long term employment relationship coupled with a discharge calculated to avoid employer responsibilities to the employee, e.g., benefits or commissions." *Garcia v. UniWyo Federal Credit Union*, 920 P.2d 642, 646 (Wyo.1996). Trabing does not allege, nor does the evidence suggest, that Kinko's terminated her employment in order to avoid giving her any benefits that she earned during her employment. We, therefore, are not moved to find that Trabing's eight years of service to Kinko's created the special relationship necessary to sustain this type of claim.

[¶ 27] Trabing's assertion that her dedication to outstanding customer service constitutes additional consideration also fails to establish the special relationship requirement. Being dedicated to outstanding customer service was simply a part of her job as branch manager. Kinko's company policy states: "Our primary objective is to take care of our customer." To establish separate consideration, Trabing would have to show that she provided something other than "merely performing the duties of the job." *Worley*, 1 P.3d at 626. Indeed, this court has specifically stated that "[l]ongevity, coupled with performance of job duties, is not sufficient to structure the special relationship required by *Wilder*." *VanLente*, 975 P.2d at 598. We hold that the facts of this case do not create a special relationship of trust and confidence necessary for Trabing to pursue a breach of the implied covenant of good faith and fair dealing claim. Kinko's was, therefore, entitled to a summary judgment on this issue.

### D. Intentional Infliction of Emotional Distress

[¶ 28] Trabing finally alleges that Kinko's termination of her employment based solely on the basis of her employees' anonymous and unsubstantiated comments during a time in which she was grieving over the recent loss of her mother caused her severe emotional distress. Kinko's responds that it was simply exercising its legal rights when it terminated Trabing's employment.

[¶ 29] Wyoming has acknowledged that certain conduct in employment situations may be outrageous enough to provide the terminated employee with a claim for intentional infliction of emotional distress. *Worley*, 1 P.3d at 628. We have adopted the tort as it is defined in the *Restatement, Second, Torts* § 46(1) (1965):

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Worley*, 1 P.3d at 628. However, if an employee's mental distress is caused solely by a termination that was permitted by the contract, then the employer has a complete defense even if the employer knows that the termination will cause the employee emotional distress. *Terry v. Pioneer Press, Inc.*, 947 P.2d 273, 278 (Wyo.1997).

[¶ 30] In light of our holding that Trabing's employment with Kinko's was at will, we find that Kinko's did nothing more than act within its legal rights when it terminated Trabing's employment. Accordingly, Kinko's has a complete defense to this claim, and summary judgment was appropriate.

### CONCLUSION

[¶ 31] We hold that there does not exist any genuine issues of material fact and that Kinko's was entitled to a judgment as a matter of law.[1] We, therefore, affirm the district court's order of summary judgment.

---

1. Trabing presented many issues for our review in this appeal. Our decisions on several of her issues made others moot; and we, therefore, did not address them.